(No. 39555.-

ROBERT R. UNDERWOOD, Appellee, *vs.* PENNSYLVANIA RAILROAD COMPANY, Appellant.

*Opinion filed March 24, 1966.*

WALKER & WILLIAMS, of East St. Louis, (DAVID B. STUTSMAN, of counsel,) for appellant.

McGLYNN & McGLYNN, of East St. Louis, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff's complaint under the Federal Employers' Liability Act for personal injuries allegedly suffered in the performance of plaintiff's duties as a brakeman for the Pennsylvania Railroad Company, defendant and appellant herein, resulted in judgment by the circuit court of St. Clair County upon a jury's verdict awarding plaintiff $55,000 damages. On appeal, a divided Appellate Court for the Fifth District affirmed, and we allowed defendant's petition for leave to appeal. The principal questions involved are whether remarks and conduct of plaintiff's counsel during the trial were so inflammatory and prejudicial as to have deprived defendant of a fair trial, and the correctness of the trial court's denial of defendant's offer of certain proof.

The trial testimony was summarized by the appellate court (62 Ill. App. 2d 134) as follows:

"The evidence shows that plaintiff was employed by defendant as a brakeman. On July 22, 1962, he was a member of a crew that was engaged in moving cars in and about defendant's Rose Lake Yard, near East St. Louis. In this work, they used an engine and a caboose. Shortly after noon they were ordered to pick up a cut of cars at Rose Lake Yard and take them down to Wiggins Yard, a distance of approximately seven miles. On the trip to Wiggins, plaintiff rode in the caboose alone, and on the return to Rose Lake, he rode with conductor John Jolliff. Jolliff was not called as a witness by either party.

"Plaintiff testified that the door of the caboose was hanging from one hinge, and he propped it open with a piece of iron. He did not prop it shut because to do so would re-

quire another type of iron, because there was no room between the sill and the bottom of the door. Of eight windows in the caboose, only one was open, because the other seven were either wedged shut, or nailed shut. The stove in the caboose had been knocked over, and dirt and soot from the stove pipe were scattered on the floor. In the debris were also crusts of bread, ashes and scraps of paper. There were no brushes, brooms or mops in the caboose, but they were available in the shanty in the Rose Lake Yard.

"Plaintiff further testified that on the return trip from Wiggins Yard, about 2:30 P.M., while the train was traveling about 15 miles per hour, he was struck in the face by dust particles. At that time the temperature was in the nineties. He finished his tour of duty and upon arriving at his home, he complained to his wife about his eye being full of dirt. His wife removed dirt from his eye, and washed it out a number of times. The eye was stinging and 'blurry'. Plaintiff's wife called the train master, and plaintiff went to St. Mary's Hospital in East St. Louis.

"Plaintiff returned to work at 10:30 P.M. on July 23, 1962. Dr. Szewczyk ordered some drops sent out to him, and Mr. Jolliff, the conductor, put them in plaintiff's eye. Plaintiff saw Dr. Szewczyk on July 24, 1962, and was seen and treated a number of times thereafter. He has not worked since July 23, 1962.

"Dr. Szewczyk, called by plaintiff, stated that he first saw plaintiff on July 24, 1962, at which time plaintiff told him that while riding on a train two days earlier, the wind blew some dirt into his eye. Upon examination he found an acute infection and three corneal infiltrates in the left eye. Between that date and August 15, 1962, he saw plaintiff almost daily, and during the period he used antibiotics, heat and various medications. A smear and culture revealed a hemolytic coccus aureus, an organism that can be carried in dust. On his last examination on June 10, 1963, plaintiff's eyesight in the left eye was 20/100ths plus two. He further

stated that plaintiff's condition was permanent, but not necessarily stationary, and his vision might improve to 20/50 or 20/60. He described the infection as a type of staph that could thrive in old bread crumbs or crusts.

"Dr. V. P. Siegel, in his capacity as a doctor for the defendant, examined plaintiff on January 14, 1963, at which time his vision measured 20/20 in the right, and 20/100 in the left eye. He stated that industrial blindness is 27/70 vision, that he would 'bad order' a man from switching duty at vision of 20/50, and as a clerk at 20/55. A man would be eligible to work as a clerk if his vision was correctible, with glasses, to 20/50.

"On July 22, 1962, plaintiff was 40 years of age, a high school graduate and had eleven years of seniority as a switchman. In 1961, he earned $5,130 and between January 1 and July 22, 1962, had earned $3,390."

In its consideration of the propriety of counsel's conduct the appellate court agreed that plaintiff's attorney made unwarranted comments, repeatedly referred to correspondence not in evidence and asked improper questions, but that court believed the misconduct not so prejudicial as to require a new trial. Probably the single most inflammatory and prejudicial episode involved several questions. Although this was an eye injury case, plaintiff's counsel on cross-examination of one of defendant's witnesses asked the following "questions": "What do you call a man with a leg off?"—"How many legs have been cut off by the Pennsylvania Railroad?"—"How many men have lost limbs who are not working?". Since this witness had testified on direct examination that the railroad ordinarily employed a "system" whereby injured workmen were offered alternative types of employment, inquiry concerning the number of such injured employees benefitted by the "system" is now urged to be relevant and proper. Dispassionate inquiry would be permissible, but the inflammatory nature of these questions and their tendency to arouse passions and preju-

dices of the jury to the detriment of defendant seems to us obvious and far outweighs any possible probative value. While the trial court did sustain recurrent objections to the above questions, their prejudicial effect scarcely can be thought to be erased by this action.

When this particular instance of prejudicial misconduct and an evidentiary error are coupled with the additional instances of unwarranted conduct on the part of plaintiff's counsel established by this record, we believe their cumulative effect necessitates retrial of this cause. On various occasions counsel volunteered answers to questions asked of witnesses by defense counsel. He predicated portions of his closing argument on "evidence" having no foundation in the record, and attempted to impugn the veracity of one of defendant's witnesses by inference and innuendo concerning certain letters never admitted into evidence or properly employed as impeaching material. This conduct was improper, could only lessen the impartiality of the jury and encourage a verdict based not upon a consideration of the properly presented evidence but one predicated upon the aroused passions and prejudices of the jury. Its total impact, coupled with the evidentiary error noted later, requires reversal and remandment.

Plaintiff argues that since many of the claimed prejudicial remarks were not objected to during the trial, any error with regard thereto should not be considered now. But there were numerous objections and several motions for mistrial made, and we have, where necessary to ensure a fair trial and protect the judicial process from deterioration, considered errors where no objection was made in the trial court. *Muscarello* v. *Peterson,* 20 Ill.2d 548, 555, citing *Belfield* v. *Coop,* 8 Ill.2d 293.

Plaintiff also argues that similar misconduct on the part of counsel for defendant during the trial precludes the latter from asserting the contentions sought to be presented here. We have examined the specific instances of such de-

fense conduct and find that they either do not at all approach the severe prejudice injected into the trial by plaintiff's counsel or were largely provoked by the remarks of counsel for plaintiff. Under such circumstances, defendant is not barred from asserting prejudicial misconduct of plaintiff's counsel as error. *Crutchfield* v. *Meyer,* 414 Ill. 210, 214.

Defendant additionally urges that the trial court committed reversible error in refusing an offer to prove "that the doors of the caboose would have been open for ventilation purposes regardless of their condition, and the fact that they were defective and so had to be propped open played no part in the plaintiff's accident." The appellate court, in affirming the trial court's determination, held that "the jury could have found that the accumulation of litter and debris was sufficient negligence on defendant's part to satisfy the requirement of liability under the Federal Employers' Liability Act, without regard to what part, if any, the condition of the door may have played in the occurrence", and therefore apparently concluded that the offer of proof would not produce relevant and material testimony.

Plaintiff's complaint also charged that the defective door proximately caused his injury by reason of its having to be propped open while the train was in motion, thus allowing foreign particles to be blown into plaintiff's eye. The proffered evidence from a switching conductor of long experience as to custom and usage tending to indicate that, wholly aside from the defective condition of the door, it would have nevertheless been left open for ventilation purposes while the train was in motion is relevant to the question of whether the defective condition of the door proximately caused, in whole or in part, plaintiff's injury, for "the omission to perform a duty [the repair of the defective door] constitutes the proximate cause of an injury only where the doing of the omitted act would have prevented the injury." (38 Am. Jur., Negligence, par. 54 at page 701; see also I.L.P., Negligence, par. 102.) That there may have

been sufficient evidence at the trial to support a verdict for plaintiff on one theory, *i.e.,* injury solely as a result of the accumulation of litter and debris on the floor of the caboose, does not warrant the refusal of evidence on behalf of defendant tending to refute another theory of liability set forth in plaintiff's complaint. The refusal of the offer of proof cannot be regarded as harmless error, for we have no way of knowing the basis for the jury's ultimate determination of liability where, as here, the verdict is general in form. We therefore believe defendant's offer of proof should have been allowed.

For the foregoing reasons, the judgment of the appellate court is reversed and the cause is remanded to the circuit court of St. Clair County for a new trial to be conducted in accordance with the views expressed herein.

*Reversed and remanded.*