TY M. POELKER, by Carl R. Poelker and Peggy I. Poelker, his Parents and Next Friends, *et al.*, Plaintiffs-Appellants, v. WARRENSBURG-LATHAM COMMUNITY UNIT SCHOOL DISTRICT No. 11 *et al.*, Defendants-Appellees.

Fourth District   No. 4—93—0023

Argued June 22, 1993.—Opinion filed September 30, 1993.—
Rehearing denied November 5, 1993.

Darrel F. Parish (argued) and Linda M. Castleman, both of Roberts, Parish & Castleman, Ltd., of Decatur, for appellants.

Nicholas J. Neiers (argued) and Rhonda L. Richards, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee Macon Community Unit School District No. 5.

Allen Verchota III (argued) and John F. Bramfeld, both of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellee Warrensburg-Latham Community Unit School District No. 11.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Ty Poelker was injured by a discus thrown by a classmate while they were preparing to participate in a track meet at Macon Community Unit School District (Macon). Ty attended Warrensburg-Latham Community Unit School District (Warrensburg-Latham).

Ty and his parents brought an action in Macon County circuit court against both school districts. Upon remand from this court (*Poelker v. Macon Community Unit School District No. 5* (1991), 212 Ill. App. 3d 312, 571 N.E.2d 479, appeal denied (1991), 141 Ill. 2d 559), and after procedural rulings by the trial judge, the jury ruled against plaintiffs on their remaining negligence counts against defendants.

Plaintiffs contend the trial judge erred by granting defendants' motion for a directed verdict on plaintiffs' wilful and wanton counts regarding supervision. They also contend the trial judge erred by denying their motion for summary judgment on the issue of defendants' breach of their duty to supervise. Plaintiffs raise numerous arguments related to the jury instructions tendered and denied and evidentiary rulings. Finally, they argue Warrensburg-Latham's closing argument was prejudicial and requires a new trial.

We find no error at trial which requires reversal and affirm.

## I. FACTS

In the spring of 1986, Ty Poelker was a student and member of the track and field team at Warrensburg-Latham. On April 29, 1986, Warrensburg-Latham competed in a track and field meet against Macon. The meet was hosted by Macon. The meet was scheduled to commence at 4 p.m., and approximately 88 children were scheduled to compete in various track and field events. Ty and a classmate, Billy Johnson, were scheduled to compete in the discus event. At approximately 3:50 p.m., Ty was hit in the head by a discus thrown by Billy during a warm-up for the later discus competition.

At the time Ty was hit by the discus there were 12 adults present who were involved, in some capacity, in the track and field meet. However, there was no adult in the immediate vicinity of the discus circle.

Ty and his parents brought suit against both school districts. In *Poelker*, involving only plaintiffs and Macon, this court determined a school hosting a junior high discus competition has a duty to provide supervision during the warm-up period as well as during the actual event. This appeal follows after our remand. Additional facts will be discussed in pertinent portions of the opinion.

## II. SUMMARY JUDGMENT

Plaintiffs allege the trial court erred in denying their motion for summary judgment on the issue of the defendants' breach of the duty to supervise. Plaintiffs have waived consideration of this issue by their failure to cite pertinent authority and an argument in support of

their contention. (134 Ill. 2d R. 341(e)(7).) In *In re Tally* (1991), 215 Ill. App. 3d 385, 390-91, 574 N.E.2d 1262, 1265, we held mere contentions without arguments or citations of authority do not merit consideration on appeal. (See also *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 884-85, 572 N.E.2d 1219, 1226-27; *People v. Hood* (1991), 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 230.) Other than a passing reference to *Poelker*, plaintiffs have cited no authority in this portion of their brief.

■ While *Poelker* is relevant to whether defendants had a duty to supervise, it provides no guidance on the issue of whether the duty was satisfied in this case; thus, plaintiffs have failed to cite any pertinent authority in support of their position the trial court erred in denying their motion for summary judgment on whether defendants *breached* their duty to supervise.

Plaintiffs' contentions in this portion of their brief are also unsupported by argument. Plaintiffs contend "Macon unequivocally asserted in this court and in the Supreme Court that it did not supervise. That was a necessary corollary to Macon's theory that it had no duty to supervise." This contention was rejected by the trial court and plaintiffs have not explained how the trial court erred in rejecting this contention, nor have the plaintiffs set forth or made reference to a portion of the record in which these "unequivocal assertions" may be located.

Although plaintiffs acknowledge the defendants' position that there were individuals providing supervision at the track meet, they do not provide any argument regarding why, as a matter of law, (1) the degree of supervision provided was inadequate to satisfy the duty to supervise, or (2) a failure to provide additional supervision constituted a wilful and wanton breach of the duty to supervise. Plaintiffs merely set forth the conclusionary statement, "[t]here was an absolutely clear, admitted breach of this duty. The court should have resolved that issue in the plaintiffs' favor before trial. Its failure to do so is against the law of the case and clearly requires reversal, with entry of judgment for the plaintiffs on that issue." We conclude this issue is waived. Moreover, plaintiffs' argument would also fail if considered on its merits.

Summary judgment is a drastic means of disposing of litigation and should be granted only when the right of the moving party is clear and free from doubt. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Shull v. Harristown Township* (1992), 223 Ill. App. 3d

819, 823, 585 N.E.2d 1164, 1167.) This court's holding in *Poelker* determined there was a duty of supervision on the part of the host school. We did not determine what was required to satisfy that duty, or whether the degree of supervision provided constituted a wilful and wanton breach of that duty. Whether the degree of supervision provided by defendants satisfied the duty to provide supervision and whether, under the facts and circumstances of the case, any breach of this duty was the result of wilful and wanton conduct were fact questions which could not appropriately be resolved by means of a motion for summary judgment. Accordingly, the trial court properly denied plaintiffs' motion for summary judgment on the issue of whether defendants committed a wilful and wanton breach of the duty to supervise.

## II. DIRECTED VERDICT

Plaintiffs allege the trial court erred in directing a verdict in favor of defendants at the close of the plaintiffs' case on the issue of whether defendants committed a wilful and wanton breach of the duty to supervise. The direction of a verdict does not require a complete absence of evidence on the side against which the verdict is directed, for the right to resolution of issues by the jury exists only if there are factual disputes of some substance. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 505, 229 N.E.2d 504, 510.) Verdicts ought to be directed when all of the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14.

Courts considering the issue of whether the breach of a duty to supervise, in a school setting, rises to the level of wilful and wanton conduct have generally determined that it does not. (See *Guyton v. Roundy* (1985), 132 Ill. App. 3d 573, 579, 477 N.E.2d 1266, 1270.) In *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447, the supreme court determined there was insufficient evidence as a matter of law to prove a school was guilty of wilful and wanton conduct when teachers permitted students to play in a "powderpuff" football game without requiring them to wear protective equipment.

The plaintiff in *Lynch* suffered a head injury in a "powderpuff" football game and sued her school board alleging, *inter alia*, wilful and wanton conduct arising out of a failure to supervise. (*Lynch*, 82 Ill. 2d at 418, 412 N.E.2d at 451.) Donald Eugene Arnold, an instructor in football officiating and coaching at the University of Illinois,

testified he knew of no organized tackle football games in which equipment such as helmets, shoulder pads, and the like are not used and such equipment is required by the rules promulgated by the Illinois High School Association. (*Lynch*, 82 Ill. 2d at 420, 412 N.E.2d at 452-53.) Arnold additionally testified he had coached a "powderpuff" tackle football game, attendance at two weeks' practice prior to the game was mandatory, and helmets and full football gear were worn by the participants in the game. Arnold testified head injuries are usually severe and it is mandatory that helmets be worn at all times the players are playing football. (*Lynch*, 82 Ill. 2d at 420-21, 412 N.E.2d at 453.) The evidence at trial established that some practice sessions were held, although little instruction was given during these sessions. It was suggested football could be rough and the girls were advised to wear mouth guards during the game. Plaintiff purchased and wore a mouth guard during the game; however, the girls were not supplied with protective equipment. (*Lynch*, 82 Ill. 2d at 418, 412 N.E.2d at 451.) The court, quoting from its earlier decision in *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29, 134 N.E.2d 277, 280, stated:

> " '[W]hile it is to be noted that in many instances different wording, language and terminology is employed by the different courts *** [to define wilful and wanton conduct], the basic general concept of the term as applied to the facts in the particular cases has remained essentially the same. The basic element in all of these cases indicates that liability can be founded under such a cause of action where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved. The knowledge concerning other persons can be actual or constructive.' " *Lynch*, 82 Ill. 2d at 429-30, 412 N.E.2d at 457.

The court determined the teachers' conduct did not rise to the level of wilful and wanton conduct. The court found there was no evidence of an intentional act committed by the teachers and the evidence did not establish a conscious disregard for the safety of the children. The court noted several practice sessions were conducted, albeit not very efficiently, the girls were warned football could be rough, and they were advised to wear mouth guards. The court concluded the evidence did not establish a wilful and wanton disregard for the safety of the girls, simply insufficient precautions for their protection. (*Lynch*, 82 Ill. 2d at 430, 412 N.E.2d at 457.) Accordingly, the supreme court determined there was insufficient evidence of wilful and

wanton conduct as a matter of law. *Lynch*, 82 Ill. 2d at 433, 412 N.E.2d at 459.

■ Similarly, in the present case there was no evidence of intentional conduct. Nor did the evidence establish conscious disregard for the safety of the children. The evidence established the Warrensburg-Latham team had been instructed regarding the safety and use of the discus at the beginning of the season and the safety instructions had been reviewed at every practice. The team members had been told not to throw the discus if anyone was standing inside the vector lines and not to stand within the vector lines. The throwing area was clearly marked with vector lines and the discus throws were directed toward an open field away from other events. There were 12 adults present responsible for the conduct and supervision of the 88 children at the meet.

It would have been preferable to have an adult supervisor dedicating his or her exclusive attention to the supervision of the discus warm-ups. However, we do not believe, under the circumstances, the failure to provide this level of supervision was either intentional or done with a conscious disregard for the safety of the children. It did not constitute wilful and wanton conduct on the part of the defendants. Accordingly, the trial court properly granted directed verdicts in favor of the defendants on the issue of whether the defendants were guilty of a wilful and wanton breach of the duty to supervise the children.

## IV. JURY INSTRUCTIONS

Jury instructions are provided to inform the jury of the correct principles of law which apply to the evidence presented. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085, 1092.) The trial judge has discretion in determining which issues have been raised by the evidence and which instructions will be tendered to the jury. (*Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 98, 476 N.E.2d 1378, 1383.) On appeal, a new trial will be granted based on a trial judge's refusal to provide a tendered instruction only when the refusal amounts to a serious prejudice to the party's right to a fair trial. *Village of Pawnee v. Azzarelli Construction Co.* (1989), 183 Ill. App. 3d 998, 1023, 539 N.E.2d 895, 910; *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 200, 549 N.E.2d 1295, 1303.

### A. *Issues Instruction*

Plaintiffs tendered the following issues instruction (instruction No. 15):

"Macon failed to furnish a reasonably safe place for the discus event, including all cages, fences, ropes, flags, markers and the like necessary to control the location of the throwers and bystanders, and well as to control the travel of the errantly thrown discus.

Macon failed to adopt and enforce a policy requiring at least one person to supervise discus throwers at all times while they are at the discus[-]throw area throwing the discus[.]

Macon made the discus event a part of the track meet when it knew or should have known that there would not be sufficient qualified personnel present for the safe conduct of that event.

Macon failed to train its employees in safe and proper supervision of the discus participants[.]

Macon failed to train its volunteers in safe and proper supervision of the discus participants[.]

Warrensburg failed to adopt and enforce a policy requiring at least one person to supervise its children at all times while they are at the discus[-]throw area throwing the discus[.]

Warrensburg made the discus event a part of the track meet when it knew or should have known that there would not be sufficient qualified personnel present for the safe conduct of that event[.]

Warrensburg failed to train its employees in the safe and proper supervision of the discus participants[.]"

The trial judge rejected both issues instructions submitted by the parties and provided the following to the jury:

"Macon failed to furnish a reasonably safe place for the discus event, including cage, fences, ropes, flags, markers or the like.

Macon failed to adopt a policy requiring adequate supervision for discus participants.

Warrensburg failed to adopt a policy requiring adequate supervision for discus participants."

Plaintiffs contend their issues instruction was improperly rejected and this prejudiced the outcome of the trial.

### 1. Macon's Response

Macon responds that plaintiffs' instructions related to its alleged negligence were properly denied because a school district is immune from the negligence of its teachers and certified employees who are in control and supervision of students. Macon relies on *Kobylanski v.*

*Chicago Board of Education* (1976), 63 Ill. 2d 165, 174, 347 N.E.2d 705, 709, which concluded because section 24—24 of the School Code (Code) (Ill. Rev. Stat. 1991, ch. 122, par. 24—24) confers upon educators the status of parent or guardian, plaintiffs must plead wilful and wanton misconduct to maintain an action against a school or its teachers in matters relating to discipline in and conduct of schools and schoolchildren.

The Illinois Supreme Court again observed in *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 51, 373 N.E.2d 1323, 1325, that section 24—24 immunity applies to situations involving negligence arising out of the teacher-student relationship in matters relating to the teacher's personal supervision and control of the conduct or physical movement of a student.

A party has no right to instruct the jury on issues not properly raised during the proceedings. (*Ralston*, 132 Ill. App. 3d at 98, 476 N.E.2d at 1383.) Although the statements included in plaintiffs' rejected issues instruction had been included in their amended complaint, these allegations did not properly raise a negligence cause of action against the school districts because the allegations relied on the action or inaction of school officials. When school officials' conduct or inaction is at issue, section 24—24 of the Code grants the school district immunity from prosecution.

Only when the complaint alleges independent negligence of a school district, rather than liability through acts of a teacher or other school official, is the district not entitled to vicarious immunity under the Code. (*Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467, 473, 588 N.E.2d 1185, 1188.) The cause of action against the school district in *Sidwell* was based solely on the direct negligence of the school district for its alleged failure to properly maintain the premises.

■ The allegations which plaintiffs were not permitted to include in the issues instruction here related to action or inaction by school officials. Teachers and other certified employees from both Macon and Warrensburg-Latham were present on the grounds when Ty was injured; it was *their* alleged failure to supervise or to adequately supervise which was at issue in this case. As in *Kobylanski* (63 Ill. 2d at 174, 347 N.E.2d at 709), the school districts in this case were immune from the negligence of its teachers and certified employees in the control and supervision of the students.

Additionally, plaintiffs' instruction No. 15 contained repetitious and unnecessary allegations which may have confused the jury or

overemphasized certain aspects of plaintiffs' claims, *i.e.*, vicarious liability issues.

### 2. Warrensburg-Latham's Response

Plaintiffs' instruction No. 15 intimated Warrensburg-Latham had a duty to provide constant adult supervision to the children participating in the meet. This instruction was inaccurate. Section 24—24 of the Code requires teachers and other certified educational employees to maintain discipline at all activities related to the school program. It further provides these school officials stand in relation of parent and guardian to the students and the relationship may be exercised at any time "for the safety and supervision of the pupils in the absence of their parents or guardians." Ill. Rev. Stat. 1991, ch. 122, par. 24—24.

■ Nothing in this provision establishes Warrensburg-Latham was bound to provide at least one adult supervisor on a constant basis. The school district had a duty to supervise, but plaintiffs' instruction No. 15 could have confused the jury about the degree of supervision Warrensburg-Latham was required to provide. The trial judge's instruction was proper.

Warrensburg-Latham contends the second provision pertaining to it in plaintiffs' instruction No. 15 attempted to apply the *Poelker* standard to it, which was improper and unintended by this court's ruling. In *Poelker* (212 Ill. App. 3d at 318, 571 N.E.2d at 482), this court concluded the school hosting the event assumed the supervisory responsibility. Contrary to Warrensburg-Latham's claim, this conclusion does not necessarily preclude a finding Warrensburg-Latham also had a responsibility related to supervision when the incident occurred. Nevertheless, we conclude it was not error to refuse plaintiffs' No. 15.

As noted by Warrensburg-Latham, and not countered by plaintiffs in their reply brief, there was no proof adduced which indicated Warrensburg-Latham failed to train their employees in supervising students. An instruction not supported by the evidence need not be provided to the jury. *Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 760, 449 N.E.2d 942, 946.

### B. *Non-Pattern Jury Instructions*

Plaintiffs argue the trial judge erred by giving only pattern jury instructions because Ty's injury was not adequately covered by these instructions. According to plaintiffs, unlike the pattern instructions, this case involves issues of sports rules, supervision by school personnel, and evidence of custom within an industry.

Where no pattern instruction accurately states the legal principle raised by the evidence, a non-pattern instruction is permissible if it is simple, brief, impartial and nonargumentative. 134 Ill. 2d R. 239(a); *Roberts v. Norfolk & Western Ry. Co.* (1992), 229 Ill. App. 3d 706, 722, 593 N.E.2d 1144, 1155; *Daly v. Carmean* (1991), 210 Ill. App. 3d 19, 31-32, 568 N.E.2d 955, 963; *Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 45-46, 502 N.E.2d 480, 482.

The first pattern instruction of which plaintiffs complain is that on duty, that defendants had a general duty to use ordinary care for the plaintiff's safety. Illinois Pattern Jury Instructions, Civil, No. 10.04 (2d ed. 1971) (hereinafter IPI Civil 2d).

Plaintiffs contend the following duty instructions Nos. 24 and 23, respectively, which they tendered, should have been given:

"It is the duty of the host school of a dual junior high school track meet to supervise the warm-ups as well as the meet events."

"It is the duty of a school board to adopt and enforce all necessary rules for the management of the schools in their district, and to establish a policy on discipline."

Plaintiffs argue these instructions aptly outlined the law related to the issues in the case and failure to give them was prejudicial because the ordinary duty instruction did not provide the jury with guidance on the law applicable to the case.

Macon contends plaintiffs' instruction No. 23 was properly rejected because they did not provide sufficient evidence to warrant the instruction. It directs this court to the terms "necessary rules for the management of school" and "a policy on discipline" within plaintiffs' instruction. According to Macon, there was no evidence it violated a school discipline policy, nor was there evidence that detailing specific rules concerning the supervision of track and field events in general or the discus event in particular, or of the warm-up throws of visitor athletes was a "necessary rule." Similarly, Warrensburg-Latham contends that although plaintiffs' statements are based on statutory duties listed in the Code, these duties were not relevant to the facts of the case.

Cases on which plaintiffs rely are distinguishable. In *Paulison v. Chicago, Milwaukee, St. Paul & Pacific R.R., Inc.* (1979), 74 Ill. App. 3d 282, 284, 392 N.E.2d 960, 961, the plaintiff administrator of the deceased's estate brought a wrongful death action against defendants for damages resulting from a railroad crossing accident. The *Paulison* court concluded the general instruction regarding defendants' alleged negligence was insufficient to inform the jury of a wholly different

theory of recovery—the railroad's failure to provide an automatic gate at the crossing where the accident occurred. It also concluded plaintiff had presented evidence related to this theory, thereby warranting the instruction related to this basis for recovery. *Paulison*, 74 Ill. App. 3d at 288-89, 392 N.E.2d at 964-65.

In *Ono v. Chicago Park District* (1992), 235 Ill. App. 3d 383, 384-85, 601 N.E.2d 1172, 1174, plaintiff was raped while parking her vehicle in defendant's parking lot. An issue in that case was the extent of a duty owed plaintiff by defendant. The jury was provided the ordinary care duty instruction submitted by plaintiff and an instruction submitted by defendant which outlined when a third party has a duty to protect another from criminal attack. The *Ono* court concluded defendant's instruction was proper because it informed the jury defendant had a duty to protect plaintiff from reasonably foreseeable criminal activity. *Ono*, 235 Ill. App. 3d at 388, 601 N.E.2d at 1176.

■ In the present case, failure to provide plaintiffs' instruction did not preclude the jury from considering a particular basis for recovery. The jury was informed it was to consider whether Warrensburg-Latham failed to adopt a policy requiring adequate supervision for discus participants. This instruction properly presented the issue related to Warrensburg-Latham's potential liability. The jury was similarly informed to evaluate the evidence against Macon with an eye toward whether proper supervision was provided the day the incident occurred.

The general duty instruction, combined with the issues instruction, informed the jury it should decide whether the defendant school districts provided proper supervision under the circumstances.

### C. *Violation of Rules of the Sport*

The trial judge refused plaintiffs' instruction:

> "There were in effect at the time of the occurrence in question certain rules and recommendations of the National Federation of High School Associations, adopted by the Illinois Elementary School Association, which have been received in evidence.
>
> If you decide that a party violated or failed to enforce such rules and recommendations on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, a party was negligent before and at the time of the occurrence in question."

Plaintiffs contend this instruction should have been given because it represented *rules* for the discus competition, including precompetition warm-up when Ty was injured. They rely on *Nabozny v. Barnhill* (1975), 31 Ill. App. 3d 212, 334 N.E.2d 258, in arguing the instruction outlined the proper standard of care.

In *Nabozny*, defendant, a soccer player on the opposing team from plaintiff's, kicked at the ball while it was in the plaintiff-goal-keeper's possession. Defendant kicked plaintiff's head and caused permanent injuries. The *Nabozny* court relied on established rules which governed amateur soccer matches in concluding the trial court erred by directing a verdict in favor of defendant. It reasoned defendant had a duty to refrain from conduct proscribed by the established rules. *Nabozny*, 31 Ill. App. 3d at 215, 334 N.E.2d at 260-61.

Plaintiffs in the present case argue instruction No. 26 regarding the rules and recommendations of the National Federation of High School Associations (NFHSA) set out the standard of care to which the defendant school districts were bound because the rules had been adopted by the Illinois Elementary School Association (IESA). According to plaintiffs, the "rules" required constant supervision of participants in the discus competition and the jury should have known of this requirement.

Plaintiffs direct this court to specific provisions of the "rules." However, these provisions do not establish they were mandatory rules which the defendant school districts were bound to follow. Rather, the regulations provided guidance to high schools about how to regulate track- and field-related events. Nothing in the regulations, nor any additional evidence, established the districts were required to provide constant supervision during the meet at which Ty was injured.

The manual states, "shot put and discus areas *should* be well marked, and other precautions taken to insure the safety of contestants and spectators at all times." (Emphasis added.) "Should" is a permissive and not a mandatory term. In addition, the foreword to the regulations states the rules "are recommended for use in all schools."

Plaintiffs direct this court to the NFHSA provision which states:

"Coaches and officials who find facilities or equipment that do not meet rule specifications, or are unsafe, *would be well advised* to consider eliminating the event or withholding their athletes from competition." (Emphasis added.)

This provision, too, supports a conclusion the regulations were meant to provide guidance and did not mandate how the discus event or the

warm-ups were to be supervised. The provision *advises* against participating in an event not properly supervised. Equating these regulations with the force of law would have been inappropriate. The trial judge properly rejected this non-pattern instruction.

### D. *Custom Related to Issue of Negligence*

Plaintiffs next argue the court erred in refusing instruction No. 25, which read:

> "Evidence as to whether or not a party conformed to a custom that had grown up in the given locality or activity is relevant and ought to be considered, but is not necessarily controlling on the question whether or not the party exercised ordinary care, for that question must be determined by the standard of care that I have stated to you."

Plaintiffs note that at the post-trial motion stage, the trial judge conceded if he were to rule on this issue again, he would likely have given this instruction.

Macon contends the custom instruction was properly rejected because it improperly focused on a specific factual matter. It provides no legal support for this theory. Warrensburg-Latham contends this instruction was effectively provided because IPI Civil 2d No. 1.04, stating the jurors could consider their own ordinary experience and observations in the affairs of life, was provided. (IPI Civil 2d No. 1.04, at 13.) Accordingly, the jury was informed it could consider the weight of the evidence of custom in light of its ordinary experience.

The instruction submitted by plaintiffs did not belabor any point presented to the jury. Moreover, evidence of custom can be admitted to assist the jury in determining whether defendants met the appropriate standard of care. See *Roach v. Springfield Clinic* (1991), 223 Ill. App. 3d 597, 611-12, 585 N.E.2d 1070, 1079; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.5, at 216 (5th ed. 1990).

■ Plaintiffs instruction No. 25 related to custom could have been given. However, as also observed by the trial judge during post-trial proceedings, failure to provide this instruction does not amount to reversible error.

### V. RULINGS ON EVIDENCE

### A. *Judicial Admission*

Plaintiffs contend the trial judge erred by refusing to admit as true the fact that in its petition for leave to appeal to the Illinois Su-

preme Court (No. 72147), Macon stated it did not provide supervision the day the accident occurred. Plaintiffs argue the fact Macon had previously admitted the lack of supervision and was not admitting this fact at trial was probative in itself. The jury should not have been foreclosed from learning of this inconsistency.

■ For a statement to constitute a judicial admission, it must be clear, unequivocal and uniquely within the party's personal knowledge. The statement must also be an intentional statement which relates to concrete facts and not an inference or unclear summary. *Derby Meadows Utility Co. v. Inter-Continental Real Estate* (1990), 202 Ill. App. 3d 345, 355, 559 N.E.2d 986, 991; *Kirby v. Jarrett* (1989), 190 Ill. App. 3d 8, 15, 545 N.E.2d 965, 969.

Macon's petition for leave to appeal to the Illinois Supreme Court stated, "[a]t the time of the incident there were no Macon personnel supervising the warm-up of the Warrensburg-Latham discus event participants." Macon contends this statement was made solely for the purpose of determining the propriety of the trial court's entry of summary judgment on behalf of Macon and this court's later reversal of the summary judgment motion. In the summary judgment proceedings Macon argued it had no duty to supervise the day of the incident.

Macon contends the statement in its petition should not be viewed as a judicial admission because it is not clear, deliberate, or unequivocal. Whether supervision was provided was not relevant to the summary judgment proceedings. All that was relevant was whether Macon had a duty to provide supervision. This argument is not persuasive.

■ However, the statement made by Macon does not qualify as a judicial admission because it did not unequivocally show Macon provided no supervision at the warm-up, either through a volunteer or indirectly through an arrangement with Warrensburg-Latham. In addition, the statement does not represent a fact uniquely within Macon's knowledge. Warrensburg-Latham personnel and participants in the discus event and other events could have known whether Macon supervised the warm-up in any way.

In their reply brief, plaintiffs raise a new argument on this issue, contending the statement should have been admitted as a statement against Macon's interest. This contention, however, has been made only in their reply brief, and has therefore been waived. (*In re White* (1982), 103 Ill. App. 3d 105, 109, 429 N.E.2d 1383, 1387-88.) The trial judge properly rejected plaintiffs' attempt to admit Macon's statement in its petition to the Illinois Supreme Court as a judicial admission.

## B. *Testimony about Discus Cages*

James Graham, Macon's expert, testified that under the IESA rules in effect at the time of the trial, discus cages are recommended and would be required beginning in 1993. This offer of proof was refused by the trial judge. Plaintiffs argue this was prejudicial error because Macon had argued schools do not customarily furnish cages. According to plaintiffs, the rule which excludes evidence of subsequent remedial measures does not pertain in this instance.

Ty was injured on April 29, 1986. The rules indicated cages were recommended in 1992 and would be required in 1993. Ordinarily, later remedial changes or repairs are inadmissible to establish a party's negligence. *Hodges v. Percival* (1890), 132 Ill. 53, 56, 23 N.E. 423, 424; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §407.1, at 218 (5th ed. 1990).

Macon correctly notes the cases relied on by plaintiffs do not bolster their contention. In *McLaughlin v. Rush-Presbyterian St. Luke's Medical Center* (1979), 68 Ill. App. 3d 546, 549, 386 N.E.2d 334, 336, the *defendant* introduced evidence to show an alternative explanation of the occurrence. The *McLaughlin* court aptly noted exclusion is required only when the evidence of post-occurrence change is introduced as evidence of negligence.

Similarly, in *Millette v. Radosta* (1980), 84 Ill. App. 3d 5, 19, 404 N.E.2d 823, 834, the evidence admitted was a recall letter related to a vehicle in which plaintiff was injured. The court concluded the post-occurrence remedial measures rule did not apply because the letter was issued before the occurrence. In addition, because the recall of the defective vehicles was federally mandated, the policy of not discouraging remedial repairs did not apply. Finally, there is a recognized exception to the rule in cases involving products liability.

In *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 392-93, 356 N.E.2d 93, 99, evidence of a regulation regarding location of fill pipes could be introduced against defendant because the regulation was in effect when the accident occurred. Introducing such evidence was not contrary to any post-occurrence remedial measure. In addition, contrary to the rules involved in the present case, the regulations in *Davis* had the force of law.

■■■ Introduction of evidence that as of 1993, years after Ty was injured, sporting regulations required installation of a cage around the discus-throwing area, would have been prejudicial to defendants by intimating an improper basis to find they were negligent.

Moreover, as noted by Macon, had the evidence been admitted, it would not likely have affected the jury's conclusion. Fourteen witnesses testified about where Ty was located when he was struck by the discus or after he fell. Only *one* of those witnesses placed Ty in a location where a cage would have prevented him from being struck if it had been installed similar to the one pictured in plaintiffs' offer of proof. Moreover, the jury was provided a special interrogatory which indicated it concluded Macon's failure to provide a cage, fence, ropes, flags, or markers was not negligence which proximately caused Ty's injuries. This indicates a recommended sports rule at a date later than when Ty incurred his injury was not relevant to the outcome of the case.

### C. *Oral Testimony about Written Rules*

#### 1. Secondary Evidence was Proper

John Hickey, the Warrensburg-Latham coach, testified he provided written safety rules to the team at the beginning of the season. The trial judge initially sustained plaintiffs' objection when he was asked what the rules said. When he was asked why a copy of the rules was unavailable, Hickey explained he discarded the rules when he retired in 1987. Despite plaintiffs' objection, Hickey was then permitted to recite four rules regarding safety which he testified were included in the rules provided to all team members.

Plaintiffs rely on the best evidence rule, which requires an original writing be offered as evidence over secondary evidence. Because Hickey had been the individual who allegedly discarded the handout, and because he had not testified he thoroughly searched for a copy of the rules, plaintiffs contend the admission of secondary evidence through Hickey's testimony about the contents of the handout should not have been allowed.

When a party seeks to introduce secondary evidence of a writing, he must first establish the prior existence of the original, its loss, destruction or unavailability, and that he diligently tried to procure the original. (*Gillson v. Gulf Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 199, 246 N.E.2d 269, 273; *Caudill v. Beil* (1984), 127 Ill. App. 3d 847, 851, 469 N.E.2d 257, 260.) The party must also rebut any inference of fraud. *Blake v. Fash* (1867), 44 Ill. 302, 304; *Lam v. Northern Illinois Gas Co.* (1983), 114 Ill. App. 3d 325, 333, 449 N.E.2d 1007, 1012.

Determining whether the destruction of the handout was in good faith was within the sound discretion of the trial judge.

(*Lam*, 114 Ill. App. 3d at 332-33, 449 N.E.2d at 1012.) We find no abuse of that discretion. Hickey's testimony about written rules which he provided to team participants and which he destroyed upon his retirement was properly admitted.

A member of the team, David Wills, testified Hickey distributed the written rules to team members at the beginning of the 1986 season. This testimony corroborated Hickey's testimony and supported the existence of the written rules. The trial court could have concluded Hickey's testimony showed the destruction of the rules was in good faith, *i.e.*, he discarded the papers thinking they would no longer be needed.

Finally, Hickey testified he did not know where any existing copies of the handout might be. He also stated he had no additional copies of the regulations and did not know where an additional copy might be or who might have a copy. The judge could reasonably have concluded that none of the former students likely had a copy of the regulations, as students no longer participating in the sport would have no reason to retain a copy.

Oral testimony is admissible to prove the existence and contents of a handout related to rules when the witness is familiar with the missing document and has an independent recollection of the contents of the lost or destroyed document, a copy of which does not exist. (*In re Estate of Salt* (1952), 346 Ill. App. 546, 549-50, 105 N.E.2d 773, 774-75.) The trial judge correctly concluded Warrensburg-Latham laid a proper foundation for the admission of Hickey's oral testimony.

## 2. Evidence was Competent

Plaintiffs also contend it was error to permit Hickey's testimony about what was contained in the rules handout because his statements were self-serving. A self-serving declaration is a statement introduced by or on behalf of a party which, if introduced, would constitute evidence in its favor. Such evidence should generally be excluded. *Owen v. Pret' A Porter Boutique, Inc.* (1973), 15 Ill. App. 3d 438, 442, 302 N.E.2d 672, 675.

However, if the evidence is otherwise competent, it need not be excluded merely because it contains statements which are self-serving. Such is the case with the evidence at issue in this case. Although his testimony was helpful to Warrensburg-Latham's defense because it tended to show the discus team had been provided safety rules, it was properly admitted as secondary evidence.

### D. *Expert Testimony*

#### 1. Recitation of Out-of-court Statements

Gary Don Hembrough, Champaign Centennial High School football coach, was called by Warrensburg-Latham to testify as an expert on the standard of care for coaches of junior high school track teams and customs regarding supervision in effect in 1986 when the accident occurred. He testified he reviewed various affidavits and depositions not in evidence in preparation for his testimony.

Plaintiffs contend Hembrough was inappropriately permitted to recite the facts contained in these out-of-court statements as affirmative facts rather than merely facts which he relied on to form his opinion. Below is a summary of Hembrough's testimony about which plaintiffs complain:

"Q. [By defendants' counsel:] What was your understanding as to whether or not Coach Hickey had a policy or procedure on personally showing his discus throwers how to throw a discus.

A. Yes.

[By plaintiff's counsel]: Objection.

THE COURT: Overruled. The answer will stand.

A. Yes, I have an opinion.

Q. What is your understanding of what that situation was?

A. I think he spent several different opportunities in teaching his young men to throw the discus and repeatedly told them of the safety procedures involved in—

[Plaintiff's counsel]: Judge, I would object to that and ask that the answer be stricken. He has just tried to recount some prior testimony, and I think it's improper.

THE COURT: Overruled.

Q. What is your understanding of where this meet occurred, the meet this case is based on?

A. At Macon High School.

Q. How many schools were involved?

A. Two.

\* \* \*

Q. Do you have an understanding whether in this case Coach Hickey gave discus safety and training instructions to his team in 1986 prior to the Macon meet?

[Plaintiffs' counsel]: Objection. I think it should be based on what's been testified to in court, not on what he read in statements and other information.

THE COURT: This is part of the foundation for the opinion he is going to give. Overruled.

A. Yes.

Q. What is that understanding.

A. It's my understanding that he had schooled them in the techniques of throwing the discus and that he had covered the safety procedures.

Q. What is your understanding of the safety procedures he covered?

A. To stay out of the vector when someone is in the ring getting ready to throw. To make sure if someone is throwing the discus to stand behind the pad, the circle, the ring area, so that no one would be hit.

Q. What is your understanding of when and where he gave these safety instructions?

[Plaintiff's counsel]: Objection.

THE COURT: Overruled.

A. My understanding is that he went through these procedures at a meeting when he asked for prospective athletes in his classroom; that at the start of the season in a letter, that he had gone over the procedures in the gymnasium, and that he had gone over them again once they were able to go outside and participate in the discus in the outside area; that he had gone over them at their team meeting at the site; seemed like he was constantly going over these.

[Plaintiffs' counsel]: Object to that comment.

THE COURT: Overruled."

According to plaintiffs, admission of this testimony was contrary to the Illinois Supreme Court's ruling in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322. Although they concede it was proper for Hembrough to base his opinions on the above-quoted matters, plaintiffs argue it was error for him to testify specifically to those matters. Hembrough's testimony was based on *what his understanding was* regarding several issues and he answered according to his understanding. These responses are not contrary to *Wilson*, which adopted Rules 703 and 705 of the Federal Rules of Evidence. Rule 705 states an expert need not give his reasons for his opinions unless the court requires otherwise. (Fed. R. Evid. 705.) An expert may be required to disclose the underlying facts or

data on cross-examination. *Wilson*, 84 Ill. 2d at 194, 417 N.E.2d at 1326-27.

■■ Hembrough should not have been precluded from stating the facts upon which he relied in reaching his opinion. Warrensburg-Latham argues had he not testified to these facts, plaintiffs could have compelled him to provide these facts during cross-examination. Defense counsel's strategy foreclosed this avenue of attack by plaintiffs' counsel. Moreover, as noted by Warrensburg-Latham, plaintiffs could have sought a limiting instruction, advising the jury to consider the underlying statements only to evaluate the basis of Hembrough's expert opinion. (See *People v. Anderson* (1986), 113 Ill. 2d 1, 12, 495 N.E.2d 485, 490.) As the trial judge ruled, these matters went to foundation and were therefore properly admitted.

### 2. Foundation for Expert's Testimony

Plaintiffs attack the qualifications of Hembrough's testimony as an expert witness regarding customs related to discus events at the junior high level in 1986 and his opinions regarding whether Warrensburg-Latham's coach Hickey acted reasonably.

An expert witness is one whose special knowledge, skill, experience, training, or education is determined by the trial court to qualify him or her to testify to an opinion, based on the witness' experience because the opinion can help the trier of fact resolve a question which is beyond the understanding or competence of people of common experience. Whether a person qualifies as an expert is within the sound discretion of the trial judge. *Loitz v. Remington Arms Co.* (1988), 177 Ill. App. 3d 1034, 1051, 532 N.E.2d 1091, 1101.

Hembrough testified he had an undergraduate and master's degrees in physical education from the University of Illinois. Among other coaching duties he was an assistant track coach at Centennial High School for 15 years. Before that he had been head coach of track and field at Thomas Jefferson Junior High School from 1962 through 1977. In this position he personally coached the discus team. He also stated he had coached approximately 150 track and field meets at home meets and meets held at other schools. Hembrough had also participated in track events when he attended high school.

Plaintiffs complain because Hembrough testified the customs in junior high school track meets were the same from 1983 to 1992, even though he had no knowledge of the customs presently in use in Decatur junior high schools and no knowledge or experience of

customs in practice after 1977. Plaintiffs argue Hembrough's testimony regarding customs in 1986 was inadmissible because he had not testified the 1986 customs were the same as the customs in force while he coached junior high school track. Nor had he testified he had any basis to know what the customs were from 1983 to present. Finally, for the same reasons, plaintiffs argue Hembrough should not have been permitted to testify regarding the standard of care in force in 1986.

Plaintiffs rely on the third district ruling in *Broussard v. Huffman Manufacturing Co.* (1982), 108 Ill. App. 3d 356, 438 N.E.2d 1217, in contending Hembrough had no special knowledge of the subject about which he testified as an expert. However, *Broussard* is distinguishable. The litigation in that case involved the construction of a household gasoline can which allegedly caused a garage fire, injuring a 12 year old. *Broussard,* 108 Ill. App. 3d at 358, 438 N.E.2d at 1218.

The expert testified the can's construction was faulty because there were not enough threads on the neck of the can to hold the cap in place. On cross-examination it was revealed that while the expert was a civil engineer, he had no special knowledge about mechanical engineering and had never designed gasoline cans. His experience was limited to tank trucks and cars as transporters of hazardous substances. The appellate court reversed the trial judge's conclusion that the expert was qualified to testify. *Broussard,* 108 Ill. App. 3d at 362-63, 438 N.E.2d at 1220-21.

The fields of engineering involved in *Broussard* were quite distinct. However, the safety concerns regarding junior and senior high school track and field programs are arguably quite similar. The weight of Hembrough's testimony may have been affected by the evidence regarding his qualifications. (*Ralston,* 132 Ill. App. 3d at 98-99, 476 N.E.2d at 1384.) Although Hembrough was not currently coaching track events and had not been doing so in 1986, the trial judge did not abuse his discretion by qualifying him as an expert to testify about standard of care and customs in existence in 1986.

### E. *Testimony of Dr. Harold Smith*

Plaintiffs argue Dr. Harold Smith's testimony should not have been admitted. He was called by defendants to dispute the testing and opinions of Dr. Jonathan Hess. Hess' assistant, Julie Alterman, had conducted a battery of tests on Ty and reported and discussed the results to Hess. Hess had met with and interviewed Ty and his family. Plaintiffs contend Smith's testimony was inadmissible be-

cause Smith was not licensed as a clinical psychologist in Illinois and because his testimony was based merely on tests performed by Hess.

Defendants correctly note Smith's testimony could not amount to reversible error because it was not presented on the issue of liability. Rather, Smith's testimony went to the issue of damages, an issue not reached by the jury. However, no error was committed by admitting Smith's testimony.

Plaintiffs argue Smith had to be a licensed psychologist in Illinois. Section 2(5) of the Clinical Psychologist Licensing Act (Act) provides:

> "The practice of clinical psychology includes psychoeducational evaluation, therapy, remediation and consultation, the use of psychological and neuropsychological testing, assessment, psychotherapy, psychoanalysis, hypnosis, biofeedback, and behavioral modification when any of these are used for the purpose of preventing or eliminating psychopathology, or for the amelioration of psychological disorders of individuals or groups." Ill. Rev. Stat. 1991, ch. 111, par. 5352(5).

Smith's testimony was not used to prevent or eliminate psychopathology, or for the "amelioration of psychological disorders." (Ill. Rev. Stat. 1991, ch. 111, par. 5352(5).) The Act relied on by plaintiffs was not applicable to Smith's testimony. Smith's actions in testifying on behalf of defendants cannot be interpreted as practicing clinical psychology in Illinois. The policy behind requiring *practicing* clinical psychologists within Illinois to be licensed in Illinois is to prevent unlicensed persons from treating people.

Moreover, the evaluation, therapy, testing, assessment, and other activities mentioned in the Act only constitute the practice of psychology when any of the activities are used to *prevent or eliminate psychopathology, or to ameliorate psychological disorders.* (Ill. Rev. Stat. 1991, ch. 111, par. 5352(5).) The Act was not intended to prevent clinical psychologists licensed out of State from testifying in Illinois courts.

Plaintiffs next argue Smith's testimony was not admissible because he used Hess' opinions to draw conclusions of his own. In *Wilson* (84 Ill. 2d at 193, 417 N.E.2d at 1326), the Illinois Supreme Court observed that Federal Rule 703 (adopted by the court in *Wilson*) allows an expert witness to use data presented to the expert outside of court and other than by his own perception. Moreover, an expert may base his opinions on data not in evidence, including

opinions of others. *In re Marriage of Hunter* (1992), 223 Ill. App. 3d 947, 954-55, 585 N.E.2d 1264, 1270.

The opinions and data produced by Hess were data reasonably relied upon by psychologists. The trial judge did not abuse his discretion by qualifying Smith as an expert and permitting Smith to testify about his opinion related to data produced by Hess.

## VI. WARRENSBURG-LATHAM'S CLOSING ARGUMENT

Plaintiffs finally argue comments made by Warrensburg-Latham's counsel during closing arguments were so prejudicial the trial judge's admonishment could not have remedied their prejudicial effect. They contend the complained-of comments improperly invited the jurors to place themselves in the position of the school board and to compare the present lawsuit to a lawsuit against a parent.

The comments complained of were as follows:

"[(1)] [Warrensburg-Latham's counsel:] The other things that you do is as a school board is you go back to your community and you get permission to tax a certain amount to pay for the teachers and the coaches and the buses and the janitors.

[Plaintiff's counsel:] [Objection.]

THE COURT: Counsel, your objection is sustained. Ladies and gentlemen, the attorneys should restrict their arguments to the evidence in the case. You can, of course, use your common sense in deciding the case.

Counsel, argue only the evidence in the case and the facts in the case.

[Warrensburg-Latham's counsel]: Thank you, your Honor. Well, you know how school districts are run. You know how school districts are funded."

"[(2)]: [Warrensburg-Latham's counsel:] I think probably most of you, probably all of you know, what a school board is, but let me remind you because I think it is important in the circumstances, the school board are people from the community, people like you, not presidents of colleges or politicians."

"[(3)]: [Warrensburg-Latham's counsel:] If you were on the school board, you would not be expected to do any of those things. What would be expected is that you would make a conscientious effort to see that the school is being run by people who were trained."

"[(4)]: [Warrensburg-Latham's counsel: (Discussing 12 year-olds)] We doesn't [*sic*] let them drive that's true. We don't give them a car, we don't let them drink, we don't let them vote, but we do let them do many things wherein it is conceivable that they will be hurt, and it is foreseeable that they will be hurt. You let them ride bikes in traffic. I know Mr. Neirs talked about that. I want to talk about it a little more just how dangerous this is. Imagine this cross-examination of a parent. Isn't it true that your son has been riding a two wheeler only for three or four years?"

"[(5)] [Warrensburg-Latham's counsel:] Every family has somebody who has a kid that gets hurt doing something because the parent let them do it, and the reason that the parents let them do it is because they are not raising hot house flowers because parents know that at some point that they have to give the kids responsibility and they accept the risk, they know that the kid might be hit, and they can be pretty sure he is going to fall down on the bike, and they are going to skin themself."

"[(6)] [Warrensburg-Latham's counsel:] You teach a kid you tell the kid you hope to God that he is listening to you, and you know that he isn't always listening to you, you just know. But they go out and they hurt themselves and it just happens. It's every parent's nightmare knowing all of the risks that their kids run and all of the responsibility that they take when they finally say okay you can go out and you can take your bike to your friend's house a mile away."

"[(7)] [Warrensburg-Latham's counsel:] What guidelines do we have as parents and do teachers have and do coaches have as to when is it exactly the right time to give the kid the next responsibility? Say you have got two parents. They are both at home. They have got a boy—let's quit picking on boys here. They have got a girl. She is ten years old, and she wants to ride her bike to a friend's house a mile away. The father says, you are just not ready, you just haven't been out in traffic enough. I don't think you should be riding your bike. The mother says, you know, she has done well in school, we have let her babysit, she is just developing some maturity. I think now is a good time to let her take on this responsibility. You know the father disagrees and the mother agrees. Is the mother negligent because she thinks the girl is ready this year and the father thinks that it is going to be

another year or two before she is ready. Is that negligence? I don't think that's negligence."

"[(8)] [Warrensburg-Latham's counsel:] Schools are a lot like parents. They don't guarantee a 100 percent safety."

Plaintiffs' counsel only objected to the first of these comments made by defense counsel. The trial judge sustained the objection regarding taxation and admonished the jury that counsel should comment only on the evidence. Although plaintiffs argue the trial judge's comment further prejudiced the jury, it was properly informed it should consider only the evidence and the facts in the case. Moreover, the jury was also provided a similar instruction.

Because plaintiffs' counsel failed to object to the additional comments complained of, plaintiffs have waived review of these comments on appeal. (*Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 483-84, 473 N.E.2d 1322, 1340-41; *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 902, 471 N.E.2d 946, 951.) Plaintiffs concede they failed to object to some of the arguments. However, they rely on *Underwood v. Pennsylvania R.R. Co.* (1966), 34 Ill. 2d 367, 215 N.E.2d 236, in contending this court should grant a new trial because of the prejudicial nature of the comments. Even if this court were to conclude the comments were inappropriate, the comments were not as gravely prejudicial as those made in *Underwood*.

In *Underwood* (34 Ill. 2d at 370, 215 N.E.2d at 238), counsel commented to a witness, "[w]hat do you call a man with a leg off?—How many legs have been cut off by the Pennsylvania Railroad?—How many men have lost limbs who are not working?" The manner in which counsel asked these questions was also inflammatory and intended to arouse the jurors' passions, and the appellate court noted there were additional unwarranted comments made by counsel. The court concluded that although no objections had been made by defendant's counsel, reversal was proper to ensure a fair trial because of the cumulative effect of counsel's conduct.

Moreover, there is no merit to plaintiffs' arguments. The comments made by Warrensburg-Latham's counsel do not intimate he was trying to inflame the jury. As noted by Warrensburg-Latham on appeal, the comments could reasonably have been meant to assist the jury in applying the proper legal standard. At issue in the case was whether Warrensburg-Latham provided proper supervision at the meet and before. Comparison to others who supervise children was not so irrelevant as to require reversal of the jurors' conclusion.

Nor does plaintiffs' reliance on *Clayton v. Bellatti* (1966), 70 Ill. App. 2d 367, 216 N.E.2d 686, compel a contrary conclusion. In *Clayton* (70 Ill. App. 2d at 374-75, 216 N.E.2d at 690), the court reversed a rear-end collision case because plaintiff's counsel stated in closing argument that neither the State trooper nor the city police officer at the scene of the accident issued a citation to plaintiff. In doing so, the court concluded the argument was irrelevant to the issues involved. The analogies in the present case were not irrelevant when the jury was to consider whether Warrensburg-Latham breached an ordinary duty to supervise the participants at the meet and before the meet.

The Illinois Supreme Court reached a similar conclusion in *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 137-38, 254 N.E.2d 453, 456. Counsel asked the jurors to ask themselves what they would have done to avoid the accident. The *Bruske* court concluded under the circumstances, the request was not designed to appeal to the jurors' sympathy. The request was consistent with the jury's task to apply the reasonable person standard.

Moreover, in the present case, the jury was instructed not to set aside its ordinary experiences but to use its experiences to make an informed decision. Warrensburg-Latham's counsel's remarks were not improper.

### VII. Conclusion

The trial judge correctly granted defendants' motion for directed verdicts on the wilful and wanton misconduct counts and correctly denied plaintiffs' motion for summary judgment on the issue of supervision. There was no error related to jury instructions which requires reversal, nor did the trial judge err in his evidentiary rulings. Finally, Warrensburg-Latham's counsel's comments during closing argument were not improper. Plaintiffs received a fair trial.

Affirmed.

COOK and GREEN, JJ., concur.