# Illinois Official Reports

## Appellate Court

***Benford v. Everett Commons, LLC*, 2014 IL App (1st) 130314**

| | |
|---|---|
| Appellate Court Caption | PAMELA BENFORD, Plaintiff-Appellant, v. EVERETT COMMONS, LLC, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-0314 |
| Filed | May 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that plaintiff's landlord failed to maintain plaintiff's apartment in compliance with the Chicago Residential Landlord and Tenant Ordinance and the implied warranty of habitability, the trial court properly barred plaintiff from using the receipts for the items she purchased to replace her damaged property to establish the fair market value of the items she lost, the appellate court rejected her contention that the verdict for plaintiff with an award of zero damages was against the manifest weight of the evidence, and plaintiff's motion to assess defendant with the costs of supplementing the record with certain transcripts was denied, since those transcripts were necessary to support issues plaintiff raised. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-M1-17472; the Hon. Sidney A. Jones III, Judge, presiding. |
| Judgment | Affirmed and remanded. |

Counsel on Appeal    John O. Noland, Jr., of Chicago, for appellant.

Scarpelli & Brady, LLC, of Park Ridge (Nicholas J. Scarpelli, of counsel), for appellee.

Panel    JUSTICE PALMER delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Pamela Benford filed an action against her landlord, defendant Everett Commons, LLC, seeking damages for defendant's failure to maintain her rental apartment in compliance with the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991)) and the implied warranty of habitability. The court granted defendant's motion for a directed verdict on property damage. A jury entered a verdict "for the plaintiff and against the defendant," found that plaintiff suffered "$0" damages as a result of the occurrence and assessed her recoverable damages as "$0." The trial court entered judgment on the jury verdict "in favor of defendant" and denied plaintiff's motion to reconsider its grant of a directed verdict. Plaintiff appeals the court's order denying her motion to reconsider, its grant of a directed verdict to defendant and the jury verdict. She argues that (1) the court erred in barring jury consideration of her lay testimony regarding her property damage, (2) the jury's verdict was against the manifest weight of the evidence and (3) the jury's verdict was legally inconsistent. We affirm and remand for correction of the court order entering judgment in favor of defendant. We deny plaintiff's motion taken with the case.

¶ 2                                     BACKGROUND

¶ 3    In May 2011, plaintiff executed a written lease agreement with defendant for a rental apartment at 5525 South Everett Street in Chicago. Plaintiff had lived in the apartment for five or six years and the lease was an extension of her previous lease. The lease term ran from June 1, 2011, to May 31, 2012. Rent was set at $800 per month.

¶ 4    In November 2011, plaintiff filed a complaint against defendant seeking damages for defendant's alleged failure to maintain the apartment in compliance with the Chicago Municipal Code and the RLTO. She asserted that, on May 14, 2011, rust-colored water began pouring into her apartment through her bedroom ceiling and walls, soaking and causing rust stains on "the vast majority" of her clothing as well as other items. Plaintiff believed that the rusty water came from a radiator pipe that defendant had disconnected and failed to reconnect in the apartment above hers. Plaintiff claimed that she immediately informed defendant in

writing of the water problem and requested immediate repair. She stated that, "to date," defendant had not repaired plaintiff's walls and ceiling. Plaintiff claimed that mold began to accumulate on her walls and ceilings shortly after the initial May 2011 occurrence and it exacerbated her existing bronchitis. She stated that she had been forced to discard much of her clothing as the items had been destroyed by indelible rust stains. Plaintiff also claimed that, despite her numerous requests, defendant failed to remediate the "hazardous mold" or the source of the water problem.

¶ 5 In count I, plaintiff charged that defendant violated the RLTO by failing to maintain her apartment in material compliance with the Chicago Municipal Code and causing the value of her tenancy to be diminished. She requested an injunction ordering defendant to immediately repair the premises, damages under RLTO section 5-12-110(e) for the replacement cost of her destroyed items, setoff against any unpaid rent, and an award for attorney fees and court costs under the RLTO. In count II, she charged defendant with breach of the implied warranty of habitability by failing to maintain her apartment in material compliance with the Chicago Municipal Code. She requested damages for the replacement cost of her destroyed clothing, setoff against unpaid rent and costs under the Code of Civil Procedure (the Code) (735 ILCS 5/1-101 *et seq.* (West 2010)).

¶ 6 Defendant answered and filed two affirmative defenses: (1) plaintiff was barred from pursuing her claims because her repeated and continuous failure to provide access to her apartment violated the requirements of the RLTO; and (2) she failed to mitigate her damages.

¶ 7 Following discovery, the case went to mandatory arbitration. The arbitrator found for plaintiff and awarded her $26,454 in damages on July 11, 2012. Defendant rejected the award and the case continued in the trial court.

¶ 8 In September 2012, plaintiff filed the two-count amended complaint underlying this appeal, asserting the same allegations and claims as in the original complaint. Defendant amended its affirmative defenses, adding a third affirmative defense asserting that plaintiff failed to pay rent for the apartment and, therefore, any judgment for plaintiff should be offset by the amount of past-due rent. The case was set for jury trial.

¶ 9 The court held a hearing on the parties' motions *in limine* and proposed jury instructions. The court denied defendant's motion *in limine* to bar plaintiff from testifying regarding the fair market value of her destroyed personal property. It granted defendant's motion *in limine* to bar plaintiff from testifying regarding the purchase price of items she purchased after the leak, allegedly to replace her property destroyed by the leak. It also denied defendant's motion to bar plaintiff from testifying that she saw mold in her apartment, holding that plaintiff could not testify regarding her medical diagnosis but could testify regarding the presence of mold, her respiratory issues and that she went to the doctor.

¶ 10 The jury trial commenced on October 19, 2012. The record does not contain a report of proceedings of the multiday trial. Assorted witnesses testified during trial but the record contains only transcripts of the direct and cross-examination of plaintiff. Looking to plaintiff's testimony, she testified that, after the leak, she noticed mold started forming on her walls. By the time she moved out of the apartment some nine months later, the mold was on the crown molding in the living room and dining room and in the closet next to the bedroom. Plaintiff testified that she contacted defendant numerous times regarding the leak and mold but defendant never remedied the problems. She estimated that she was unable to use 80% of her apartment as a result of the mold. Plaintiff presented a slide show of photographs "of the

damage in the apartment" to the jury. She also showed photographs of clothing she asserted was destroyed by the leak, but had no photos showing the clothing items in their damaged condition.

¶ 11     Plaintiff testified that the water leaked onto and destroyed "everything" in her bedroom closet, her chest of drawers and her hall closet. She stated that clothing, shoes, electronics, boxes of books, her mother's fur coat and "stuff you keep in closets" were destroyed by the rust-colored water and she threw most of the items away because the rust stains could not be cleaned. Plaintiff testified that, except for her mother's fur coat, she had purchased the items over the six years she lived in the apartment.

¶ 12     Plaintiff tendered receipts for the purchase price of assorted designer clothing items. She testified that other clothing by the same designer was also destroyed but she did not know what she paid for those items. She did not know the value of her mother's fur coat. Plaintiff tendered an Excel spreadsheet that she had prepared in May 2011 when her property was destroyed. She explained that the spreadsheet showed items destroyed by the leak that she threw away because they were "ruined" by rust stains and could not be cleaned. The spreadsheet lists 56 items and shows the price plaintiff allegedly paid for the items. She submitted no receipts for any of the items and the list did not state when the items were purchased. Plaintiff testified regarding the purchase price of some of the items on the list and when she purchased them.

¶ 13     Asked regarding other damages she suffered as a result of the leak, plaintiff testified that she began to develop respiratory problems. She noticed the breathing difficulties in June 2011, had not experienced the symptoms prior to the mold and described the severity of her symptoms as "an eight" on a scale of 1 to 10. Plaintiff testified that she went to see a physician for the symptoms and was prescribed medication, incurring expenses for doctor visits and medication. She submitted receipts for those expenses.

¶ 14     On cross-examination, plaintiff testified that she did not know the fair market value of any of her destroyed items at the time of the incident/leak. Questioned extensively regarding the fair market value of the destroyed items at the time of the leak, she testified that she did not know how to determine fair market value, had no receipts for the items on the spreadsheet and had no evidence of fair market value of her items because she did not know how to produce or deduce the fair market value.

¶ 15     Plaintiff testified that, within one month of the leak, defendant had offered to move her into two other units in the building but that she declined the offer because the proffered apartments were not to her satisfaction. She also testified that she stopped paying her rent in June 2011, vacated the apartment in February 2012 and did not notify defendant that she had moved. She stated that, when she vacated the apartment, she left behind damaged items that she could no longer use due to the water damage.

¶ 16     At the close of plaintiff's case, defendant moved for a directed verdict on the basis that plaintiff failed to prove any damages. It argued plaintiff failed to prove the presence of mold or injuries resulting from that mold and requested that the court strike plaintiff's claims regarding mold. It also argued that plaintiff failed to prove property damage, as shown by her trial testimony that she did not know the fair market value immediately before the leaks of the items she claimed were damaged by the leaks.[1] It requested that the court bar recovery for (1)

---

[1]When personal property is destroyed or rendered useless, the ordinary measure of damages for the property is the fair market value at the time of the loss, at the time immediately prior to its destruction.

$38,040 in property damage for which plaintiff's only evidence was her testimony and (2) $8,011.97 in property damage for which plaintiff's evidence consisted of receipts for replacement purchases made 10 months after the alleged leaks and after plaintiff had moved to a new address. Defendant argued that, as a result of plaintiff's failure to prove any damages or provide any evidence as to fair market value, the court should grant a directed verdict in favor of defendant.

¶ 17    Following argument on the motion, the court orally denied defendant's motion for a directed verdict on personal injury damages, finding that plaintiff could testify regarding her symptoms and the mold she saw in her home. The court then granted defendant's motion for a directed verdict on property damages. It stated that, after two days of testimony, although plaintiff had testified generally concerning the purchase price of most of the items and specifically on some others, she had "declined to make any kind of attempt at what fair market value might be." Noting that it was plaintiff's burden to prove damages, the court stated:

> "[Plaintiff is] articulate and intelligent, but she didn't even make an attempt to opine, 'Well, I paid $200 for it. It was two months old, I think it is worth $200.' Now, that's very subjective testimony, but even probate law tells us that an individual is competent to at least make a proffer of what the value of their own property is.
>
> ***
>
> I can't allow the jury to speculate on matters that might have affected the fair market value *** those matters could have been gone into and they weren't, and the jury would have to speculate on the value of every single item remaining unchanged *** from its original date of purchase."

¶ 18    Plaintiff's counsel suggested that he be allowed time to brief the issue and asked the court to reserve ruling on the motion for a directed verdict given that counsel had just received it that morning. The court denied the request and again stated it was granting defendant's motion for a directed verdict with regard to property damage, stating that "all the damage testimony regarding clothing and furniture" was "out."

¶ 19    On October 22, 2012, the jury came to its verdict. All 12 jurors executed "VERDICT FORM B," which provides as follows:

> "We, the jury, find for the plaintiff and against the defendant, and further find the following:
>
> First: Without taking into consideration the question of reduction of damages due to any affirmative defense, we find that the total amount of damages suffered by the plaintiff as a proximate result of the occurrence in question is $0, itemized as follows:
>
> The reasonable expense of necessary medical care, treatment and services received: $0
>
> Second: Considering the first and third affirmative defenses, we find that the reduction attributable solely to the plaintiff's conduct is $5,850.
>
> Third: After reducing the total damages sustained by the plaintiff by the reduction attributable solely to the plaintiff's conduct, we assess the plaintiff's recoverable damages in the sum of $0."

---

*Harris v. Peters*, 274 Ill. App. 3d 206, 207 (1995); *Jankoski v. Preiser Animal Hospital, Ltd.*, 157 Ill. App. 3d 818, 820 (1987).

¶ 20    The court entered judgment on the jury verdict on the same day, October 22, 2012. It entered the following order:

"The jury having returned a unanimous verdict in favor of defendant and against plaintiff Benford.

IT IS HEREBY ORDERED:

1) Judgment is hereby entered on the verdict in favor of defendant and against plaintiff.

2) Defendant's costs to be reimbursed by plaintiff."

¶ 21    On November 20, 2012, plaintiff filed a motion to reconsider "the Court's October 22, 2012, trial ruling precluding the jury from considering any evidence concerning the damage to [plaintiff's] destroyed personal property based on the Court's conclusion that [plaintiff] did not present sufficient evidence of the fair market value of those items." She asserted the court should reconsider its ruling for the following four reasons. First, the court erred in denying her counsel's request for an opportunity to brief defendant's motion for directed verdict. Second, she was fully competent to testify as to the value of her ruined property because, where property is of a usual and ordinary nature, such as household goods, the value is a matter of common knowledge and anyone, including a housewife, is competent to testify regarding that value. Third, "the market value of [her] destroyed items is equal to the items' retail price for which [plaintiff] testified to paying, where, as here, there is no contrary evidence demonstrating otherwise." Lastly, with regard to her ruined custom-made clothing, "the law specifically allows the jury to consider evidence concerning the purchase price and age" of unique items. Plaintiff requested that the court vacate its October 22, 2012, ruling and order a new trial on damages only.

¶ 22    The court denied the motion to reconsider on December 20, 2013. Plaintiff filed a timely notice of appeal on January 18, 2013. She subsequently filed an amended notice of appeal by leave of court on August 15, 2013.

¶ 23                                    ANALYSIS

¶ 24    Plaintiff argues that the court erred in denying her motion to reconsider because (1) the court erred in barring jury consideration of her lay testimony regarding her property damage, (2) the jury's verdict was against the manifest weight of the evidence and (3) the jury's verdict was legally inconsistent.

¶ 25             A. Barring of Plaintiff's Testimony Regarding Property Damage

¶ 26    Plaintiff first argues that we should reverse the trial court's order denying her motion to reconsider because the court erred in granting defendant's motion for a directed verdict on property damage on the basis of plaintiff's failure to prove the fair market value of her clothing and damaged personal items. Plaintiff sought personal property damages for her used clothing, furniture and electronics allegedly destroyed by the water leak. On defendant's motion *in limine*, the court barred plaintiff from testifying regarding and presenting receipts for the purchase price of items she purchased after the leak, allegedly to replace her property destroyed by the leak. It denied defendant's motion *in limine* to bar plaintiff from testifying regarding the fair market value of her destroyed personal property. At the close of plaintiff's case, having heard plaintiff's testimony, the court granted defendant's motion for a directed

verdict on property damages, finding plaintiff failed to present evidence of the fair market value of her clothing and property at the time of the loss. It denied plaintiff's motion to reconsider these findings.

¶ 27    Plaintiff asserts that her testimony and evidence were sufficient to prove the value of her clothing and damaged personal property and the court, therefore, erred in (1) barring her trial testimony and purchase receipts as to the value of her personal property and (2) directing the verdict regarding property damage. She argues variously that the value of common household goods is common knowledge to which anyone can testify, the market value of her damaged items is the same as the retail price she paid and no contrary evidence shows otherwise, and her lay opinion testimony is adequate to show the value of her clothing and personal items.

¶ 28    We review *de novo* the trial court's grant of a motion for directed verdict. *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 167 (2003). If a plaintiff fails to produce a required element of proof, *i.e.*, there is a total failure or lack of evidence to prove a necessary element of the plaintiff's case, then entry of a directed verdict for the defendant is proper. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 123 (2004). Verdicts should be directed " 'only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Buckholtz*, 337 Ill. App. 3d at 167 (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)).

¶ 29    We review a trial court's decision on motions *in limine* for an abuse of discretion. *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 61. The trial court abuses its discretion only if its ruling is arbitrary, unreasonable, or ignores recognized principles of law, or if no other reasonable person would take the position adopted by the court. *Id.*

¶ 30    As plaintiff acknowledges in her brief, when personal property is destroyed or rendered useless, the ordinary measure of damages for the property is the fair market value at the time of the loss, the time immediately prior to its destruction. *Harris v. Peters*, 274 Ill. App. 3d 206, 207 (1995); *Jankoski v. Preiser Animal Hospital, Ltd.*, 157 Ill. App. 3d 818, 820 (1987). The plaintiff must prove damages "to a reasonable degree of certainty." *Beasley v. Pelmore*, 259 Ill. App. 3d 513, 523 (1994). Although the plaintiff need not prove the exact amount of her loss, she must present evidence providing a basis for assessing damages with a fair degree of probability. *Id.* "[L]ack of testimony concerning the condition and fair market value of the property" at the time of loss is fatal to any action to recover for its loss. *First National Bank of Elgin v. Dusold*, 180 Ill. App. 3d 714, 719 (1989).

¶ 31    The only evidence plaintiff offered to meet her burden to prove the fair market value of her destroyed items was (a) the replacement value of the items, which the court barred her from presenting via testimony or receipt to the jury pursuant to defendant's motion *in limine* and (b) the original cost of the items, to which plaintiff testified at trial. Neither of these is sufficient to establish the fair market value of plaintiff's damaged property at the time of loss.

¶ 32    First, notwithstanding plaintiff's assertion to the contrary, the replacement cost of an item is not equivalent to the fair market value of the item at the time of loss. For most common household goods, values depreciate over time. "To award plaintiff[ ] the cost of new items as replacement cost is to award plaintiff[ ] a windfall and make [her] more than whole." *First National Bank of Elgin*, 180 Ill. App. 3d at 719. The court did not err in granting defendant's motion *in limine* seeking to bar plaintiff from presenting evidence of replacement value to the jury.

¶ 33    Second, plaintiff's trial testimony and exhibits were not sufficient to show the fair market value of her personal property at the time of the leak. It is unquestioned that plaintiff submitted evidence through testimony, receipts and a spread sheet of the original cost of assorted items of clothing and other personal property. But she presented no evidence regarding the fair market value of the items immediately before they were "ruined" by the rusty water. Indeed, plaintiff testified that she did not know the fair market value because she did not know how to determine it. Plaintiff presented evidence regarding what she paid for her items, but this is evidence of the fair market value at the time she purchased them. She made no attempt to show the fair market value of the items at the time of loss. In most instances, the loss of her personal items came after she had owned and used the items for some undetermined time and the items necessarily would have suffered wear and tear, reducing their original value.

¶ 34    Plaintiff states in her reply brief that the evidence she presented "could reasonably be used to extrapolate the fair market value." In essence, plaintiff admits that the evidence, standing alone, was insufficient to show fair market value. Further, it is not the jury's role to extrapolate the fair market value. A jury verdict must be supported by the evidence and cannot be based on conjecture or speculation. *Lagestee v. Days Inn Management Co.*, 303 Ill. App. 3d 935, 946 (1999). As the trial court noted in directing the verdict for defendant on property damages, to allow the jury to speculate regarding the fair market value of plaintiff's items at the time of loss would be improper.

¶ 35    It is plaintiff's burden to prove the fair market value of her personal property items at the time of their destruction and the jury cannot be allowed to speculate as to that value. "A jury cannot be allowed to predicate a verdict on mere conjecture or surmise." *Publication Corp. v. Chicago River & Indiana R.R. Co.*, 49 Ill. App. 3d 508, 513 (1977). To that end, the trial court has the "discretion to reject evidence which is of little probative value because of its remoteness, uncertainty, or conjectural nature." *Illinois State Toll Highway Authority v. West Suburban Bank*, 208 Ill. App. 3d 923, 929 (1991). After hearing plaintiff's trial testimony, the court correctly found that plaintiff's testimony regarding the original purchase price of her items and her failure to state any opinion regarding the fair market value of her items would invite the jury to impermissibly speculate regarding the fair market value of plaintiff's personal property at the time of loss. Any jury determination regarding fair market value would be unsupported by the record and the court did not err in granting defendant's motion for a directed verdict on property damage on this basis. Plaintiff's lack of testimony concerning the condition and fair market value of her personal property at the time of loss is fatal to her action to recover for the loss of that property.

¶ 36    Plaintiff cannot claim surprise from defendant's motion for a directed verdict or prejudice from the court's denial of her counsel's request for time to draft a response to the motion. When the court denied defendant's motion *in limine* to bar plaintiff from testifying regarding the fair market value of her destroyed personal property, defense counsel informed the court the same issue would be raised again in a motion for a directed verdict. Further, at the jury instruction conference, the court asked plaintiff's counsel whether he objected to including "damage to personal property determined by the fair market value of the property immediately before the occurrence" (see Illinois Pattern Jury Instructions, Civil, No. 30.15 (2011)) in the jury instructions. Counsel responded that he had no objection. Accordingly, plaintiff was aware that she had to prove the fair market value of her items at the time of the leak and that her failure to do so at trial would be raised in a motion for a directed verdict on property damages

by defendant. She was not prejudiced by the court's denial of her counsel's request for time to brief the motion for a directed verdict to that effect that defendant subsequently brought.

¶ 37　　The court did not err in granting defendant's motion *in limine* to bar plaintiff from presenting receipts for the replacement items and defendant's motion for a directed verdict on property damages. Consequently, it did not err in denying plaintiff's motion to reconsider.

¶ 38　　　　　　　　　　　　　　B. Manifest Weight of Evidence

¶ 39　　Plaintiff next argues the jury's verdict should be reversed as it was against the manifest weight of the evidence and that judgment notwithstanding the verdict should be entered for plaintiff. The jury had found for plaintiff but awarded her zero damages, finding that "the total amount of damages suffered by the plaintiff as a proximate result of the occurrence in question is $0, itemized as follows: The reasonable expense of necessary medical care, treatment and services received: $0." Plaintiff asserts the jury's verdict was against the manifest weight of the evidence because plaintiff's lay testimony and the medical bills admitted into evidence showed plaintiff incurred personal injuries and medical bills as a result of the mold, her photographic and video exhibits showed the presence of mold, defendant presented no contrary evidence and the court had denied defendant's motion for a directed verdict as to mold damages.

¶ 40　　Plaintiff did not raise any of these arguments in her posttrial motion. As plaintiff stated in the opening paragraph of her posttrial motion, the purpose of the motion was to request reconsideration of

> "the Court's October 22, 2012 trial ruling, precluding the jury from considering any evidence concerning the damage to [plaintiff's] destroyed personal property based on the Court's conclusion that [plaintiff] did not present sufficient evidence of the fair market value of those items *** for four separate reasons."

She asserted the following "four reasons": (1) the court should have granted plaintiff's counsel leave to brief defendant's motion for a directed verdict, (2) laypersons may testify to the value of household goods, (3) plaintiff's testimony regarding the retail value of items was sufficient to establish the fair market value of her ruined items, and (4) the law allows the jury to hear evidence regarding the purchase price and age of unique items such as plaintiff's custom-made clothing.

¶ 41　　All of the arguments in plaintiff's posttrial motion were directed to challenging the court's decision to grant defendant a directed verdict on the basis that plaintiff could not prove the fair market value of her "ruined" household goods and clothing. None of the arguments pertained to the jury's verdict, let alone challenged the verdict as being against the manifest weight of the evidence.

¶ 42　　Illinois Supreme Court Rule 366(b)(2)(iii) provides that, in a jury case, "[a] party may not urge as error on review of the ruling on a party's post-trial motion any point, ground, or relief not specified in the motion." Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994). Section 2-1202(b) of the Code further dictates that a posttrial motion "must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired." 735 ILCS 5/2-1202(b) (West 2012). Plaintiff did not raise her argument that the jury verdict was against the manifest weight of the evidence in her posttrial motion. Accordingly, this argument is forfeited. *Bakes v. St. Alexius Medical Center*, 2011 IL App (1st) 101646, ¶ 34.

- 9 -

¶ 44　　Plaintiff lastly argues that "[t]he jury verdict in favor of liability for Plaintiff was legally inconsistent with the finding for zero damages and should be reversed." We exercise all reasonable presumptions in favor of the jury verdict, and the verdict is not legally inconsistent unless it is absolutely irreconcilable. *Balough v. Northeast Illinois Regional Commuter R.R. Corp.*, 409 Ill. App. 3d 750, 774 (2011). The determination of whether the verdict is absolutely irreconcilable is best made in a posttrial motion. *Balough*, 409 Ill. App. 3d at 775. Plaintiff did not raise this in her posttrial motion.

¶ 45　　As our discussion in section B makes clear, all of the arguments in plaintiff's posttrial motion were directed to challenging the court's decision to grant defendant a directed verdict on the basis that plaintiff could not prove the fair market value of her "ruined" household goods and clothing. None of the arguments in the posttrial motion pertained to the jury verdict, let alone asserted that the verdict should be reversed because the jury's finding in favor of plaintiff was legally inconsistent with its assessment of zero damages. Plaintiff did not raise this argument in her posttrial motion and the argument is, therefore, forfeited on appeal. *Bakes*, 2011 IL App (1st) 101646, ¶ 34.

¶ 46　　On a related point, defendant asserts that plaintiff's argument on appeal incorrectly supposes that the jury found in plaintiff's favor on issues of liability. The jury delivered its verdict on verdict form B, as follows:

"We, the jury, *find for the plaintiff and against the defendant*, and further find the following:

First: Without taking into consideration the question of reduction of damages due to any affirmative defense, we find that the total amount of damages suffered by the plaintiff as a proximate result of the occurrence in question is $0, itemized as follows:

The reasonable expense of necessary medical care, treatment and services received: $0.

Second: Considering the first and third affirmative defenses, we find that the reduction attributable solely to the plaintiff's conduct is $5,850.

Third: After reducing the total damages sustained by the plaintiff by the reduction attributable solely to the plaintiff's conduct, we assess the plaintiff's recoverable damages in the sum of $0." (Emphasis added.)

Defendant argues that the jury's verdict was "an inadvertent error of form" and that the jury actually returned a unanimous verdict in favor of defendant and against plaintiff.

¶ 47　　The verdict form shows that the jury found plaintiff suffered $0 damages "as a proximate result of the occurrence" and found her conduct warranted a $5,850 "reduction." Subtracting the "reduction" from the total damages sustained, the jury then assessed plaintiff $0 in recoverable damages. Defendant claims that this shows that the jury intended to not only return a unanimous verdict for defendant and against plaintiff on liability, but also award defendant $5,850 in damages against plaintiff for her violations of the RLTO. It asserts that the jury's use of verdict form B without modifying the prepared language concerning liability was an error of form, not substance, and that the trial court's judgment order reflects the jury's unanimous verdict for defendant.

¶ 48　　The court's order was as follows:

> "The jury having returned *a unanimous verdict in favor of defendant and against plaintiff* Benford.
>
> 　IT IS HEREBY ORDERED:
>
> 　　1) *Judgment is hereby entered on the verdict in favor of defendant and against plaintiff.*
>
> 　　2) Defendant's costs to be reimbursed by plaintiff." (Emphases added.)

¶ 49　　Plaintiff responds that the jury did not complete the form in error and that the jury clearly found in her favor on liability. We agree. Defendant points us to nothing in the record to substantiate its assertion that the jury did not intend to find for plaintiff and against defendant. The fact that the jury awarded plaintiff zero damages does not mean that it found in defendant's favor as to liability. It merely means that, although the jury found defendant liable for damages, it found plaintiff did not prove those damages. Similarly, the jury's finding that a $5,850 "reduction" was due does not mean it awarded defendant $5,850 in damages from plaintiff. Instead, the finding means that, if there had been a damage award to plaintiff, her damages would be reduced by $5,850. Given that plaintiff did not prove her damages to the jury's satisfaction, the reduction necessarily did not apply. We note that the record contains no copies of the verdict forms or jury instructions given, but we also note that, given that defendant did not proceed on a counterclaim, an award of damages for defendant would not be possible. Accordingly, we presume that the jury had a reason for using Verdict Form B and intended to find for plaintiff.

¶ 50　　With regard to the trial court's order entering judgment "on the verdict in favor of defendant and against plaintiff," the court erred by changing the verdict from one in favor of plaintiff on the issue of liability to a finding in favor of defendant. The trial court has the discretion to amend the jury's verdict but abuses that discretion if it ignores recognized legal principles. *Theofanis v. Sarrafi*, 339 Ill. App. 3d 460, 473 (2003).

> "Under established legal principles, the court may amend the jury verdict 'only when the defect is one of form, rather than substance. [Citation.] A trial court should not amend a verdict in order to reach a determination that the court believes the jury ought to have made, and an amendment must reflect only what the jury clearly intended the verdict to be.' " *Id.* (quoting *Crowell v. Parrish*, 159 Ill. App. 3d 604, 608-09 (1987)).

¶ 51　　Here, the only evidence regarding what the jury intended is the verdict form on which it stated its finding for plaintiff. Defendant neither provides an explanation for why the court entered the order contrary to the jury verdict nor points us to the record to substantiate that the jury verdict was, indeed, an error. The record contains nothing to show that the court polled the jury to inquire regarding what the jury intended the verdict to be. There is also nothing to show that the court's order was the result of finding a judgment notwithstanding the verdict. Absent an inquiry by the court regarding the jury verdict and an opportunity for the jury to correct the verdict, the court had no authority to enter an order contrary to the jury verdict. In this regard, we must presume that, had the jury indicated that it had used the wrong form, the trial court would have given the jury the opportunity to correct its mistake by signing the correct form. Accordingly, on this record, the court had no basis to enter an order contrary to the jury verdict. Pursuant to that verdict, plaintiff was the prevailing party below. We remand and order the court to correct its order to reflect the jury verdict in favor of plaintiff.

¶ 52                          D. Motion Taken With the Case

¶ 53        As a final matter, we address the motion taken with the case.

¶ 54        On August 7, 2013, we granted in part plaintiff-appellant's "motion to reconsider combined motion to supplement the record and appeal and for other relief" by allowing plaintiff to supplement the record with court reporter transcripts of (a) plaintiff's trial testimony during direct and cross-examinations, (b) a motion *in limine* conference, and (c) the hearing on defendant's motion for a directed verdict. Plaintiff's motion also requested that defendant be ordered to pay the costs associated with including the transcripts in the record given that defendant had requested that the transcripts be included. Defendant objected and we ordered that "the question of who shall pay the cost of these transcripts" be taken with the case.

¶ 55        Upon review, we find that, as defendant states in its response to plaintiff's motion, the three transcripts were "obvious omissions" from the record on appeal. The transcripts relate directly to the issues raised by plaintiff on appeal and are necessary for our consideration of those issues. It is plaintiff's burden as the appellant to present this court with a sufficiently complete record on appeal to support her claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). To that end, Illinois Supreme Court Rule 323(a) provides that "[t]he report of proceedings shall include all the evidence pertinent to the issues on appeal." Ill. S. Ct. R. 323(a) (eff. Dec. 13, 2005). Illinois Supreme Court Rule 329 provides that "[m]aterial omissions" may be corrected either before or after the record is transmitted to the reviewing court and "[i]f the record is insufficient to present fully and fairly the questions involved, the requisite portions may be supplied at the cost of the appellant." Ill. S. Ct. R. 329 (eff. Jan. 1, 2006). Given that the transcripts were necessary to fully present the issues plaintiff raised, the cost of supplying the transcripts should be borne by plaintiff. Accordingly, we deny plaintiff's motion seeking to impose on defendant the costs associated with supplementing the record with the transcripts.

¶ 56                                    CONCLUSION

¶ 57        For the reasons stated above, we affirm the decision of the trial court and remand for correction of the court's order as set forth above. We deny plaintiff's motion seeking to impose on defendant the costs associated with supplementing the record with the transcripts.

¶ 58        Affirmed and remanded.