2016 IL App (1st) 150437

THIRD DIVISION
March 30, 2016

No. 1-15-0437

| | | |
|---|---|---|
| EVAN BARR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 11 L 5732 |
| | ) | |
| LAUREL CUNNINGHAM and TOWNSHIP | ) | |
| HIGH SCHOOL DISTRICT 211, | ) | Honorable |
| | ) | Diane Shelley, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Presiding Justice Mason dissented in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Evan Barr filed a personal injury complaint against defendants Laurel

Cunningham and Township High School District 211, alleging willful and wanton misconduct

for failing to provide protective eyewear during a floor hockey game that resulted in Barr's eye

injury. The trial court granted defendants' motion for a directed verdict, finding that Barr had

failed to present evidence of willful and wanton conduct sufficient to overcome defendants'

immunity under section 3-108 of the Local Governmental and Governmental Employees Tort

Immunity Act (the Act) (745 ILCS 10/3-108 (West 2010)). The court rejected, however,

defendants' alternative contention that discretionary immunity applied under section 2-201 of the

Act (745 ILCS 10/2-201 (West 2010)). Barr now appeals. We reverse and remand for a new trial.

¶ 2                                    BACKGROUND

¶ 3     On June 3, 2010, 15-year-old Barr participated in a floor hockey game with 11 other students in a physical education class taught by Cunningham at James B. Conant High School. During the game, the hockey ball (used in lieu of a hockey puck) bounced up off another player's stick and hit Barr in the eye, causing him injury.

¶ 4     Barr filed suit against Cunningham and District 211 alleging that Cunningham's failure to require students to wear available safety goggles constituted willful and wanton conduct for which District 211 was also liable as Cunningham's employer. Defendants denied these allegations in their answer, and also raised affirmative defenses under sections 2-201 and 3-108(a) of the Act (745 ILCS 10/2-201, 3-108 (West 2010). Specifically, defendants argued that pursuant to section 2-201 they were absolutely immune from liability because Cunningham's acts were discretionary, or, alternatively, that they were immune from supervisory liability under section 3-108(a) because their conduct was neither willful nor wanton.

¶ 5     The parties conducted discovery depositions of Barr and Cunningham, as well as David Peña, the department chair of physical education at Conant High School, and John Kane, the athletic director at the high school. Following the close of discovery, the parties filed cross-motions for summary judgment. Barr's motion argued that neither section 2-201 nor section 3-108 of the Act immunized defendants from liability as a matter of law, while defendants countered that the opposite was true. The trial court denied both motions, stating "genuine issues of material fact exist for the trier of fact to decide whether the acts were discretionary and rise to [the] level of willful and wanton conduct."

¶ 6     The parties proceeded to a jury trial. Prior to June 3, 2010, Barr had played floor hockey in Cunningham's physical education class approximately 8 to 10 times. Cunningham prohibited

high-sticking, fighting, and checking during floor hockey, but despite those rules, Barr had witnessed the ball fly above students' waists during play. Barr was unaware that goggles were available for his use.

¶ 7    June 3, 2010 was a "heart rate day," during which students were required to keep their heart rate at a target level for a specified amount of time. When space was available, Cunningham offered a limited number of students the opportunity to play floor hockey on heart rate days, given that she had taught floor hockey as a unit in the beginning of the spring semester.

¶ 8    The students played hockey with a squishy "safety" ball that flattened when stepped on, and plastic rather than wooden sticks. Cunningham also limited games to 12 players due to the space constraints and the increased potential for injury if more students participated. Also to prevent injury, Cunningham banned high-sticking, fighting, checking, and lifting the ball with a stick. If she observed students violating these rules, she would pull them from the game.

¶ 9    Cunningham acknowledged that goggles were available for students' use and were kept in a bin with the hockey balls in the equipment closet. However, according to Peña, the goggles were not a "hockey specific piece of equipment" and could be used "for anything that we play." Nevertheless, Cunningham admitted that she could have required the use of goggles for floor hockey; but she was unsure if she had enough goggles for all the students who played that day. Moreover, she was unaware of any rule or regulation requiring the use of goggles during floor hockey. As to the possibility of injury, she testified that none of her students had ever been hit in the face with a ball or a stick despite the fact that the ball occasionally bounced in the air.

¶ 10    Finally, while Cunningham's department chair provided her a list of units to teach, she, and not her supervisors, devised the method of teaching those units. Likewise, she alone was responsible for making and enforcing rules for each sport.

¶ 11    Peña and Kane corroborated Cunningham's testimony that she had discretion as to how to teach her class. As department chair of physical education, Peña did not provide guidelines to teachers on how to teach sports such as floor hockey. Although Kane would evaluate and discipline teachers, he depended on them "to run their classes in a way that they think is the best."

¶ 12    Following the conclusion of Barr's case-in-chief, defendants moved for a directed verdict, arguing that the evidence conclusively established that Cunningham was immune from liability under the Act and that she had not acted willfully or wantonly. After both parties rested, the trial court heard argument on defendants' motion.  The court disagreed that defendants had discretionary immunity under section 2-201, but agreed that Barr had failed to prove willful and wanton conduct as a matter of law, and, therefore, defendants were immune from liability under section 3-108(a) of the Act. Based on this finding, the court granted a directed verdict in favor of defendants. Barr timely appealed.

¶ 13                              ANALYSIS

¶ 14                        A. Section 3-108 Immunity

¶ 15    Section 3-108 of the Act immunizes local public entities and their employees from liability for injury caused by a failure to supervise an activity on public property unless their failure to provide supervision rises to the level of willful and wanton conduct. 745 ILCS 10/3-108(a) (West 2010). The Act defines willful and wanton conduct, in relevant part, as a course of

4

action that demonstrates "an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2010).

¶ 16    Defendants challenge what they characterize as Barr's "less stringent" definition of willful and wanton conduct taken from *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274 (1994). According to defendants, *Ziarko*'s common law definition of willful and wanton conduct, failure after knowledge of impending danger to exercise ordinary care to prevent the danger (*id*. at 274), was superseded by the statutory definition in section 1-210 of the Act. See *Tagliere v. Western Springs Park District*, 408 Ill. App. 3d 235, 243 (2011). To the extent that these definitions are inconsistent, and it is far from clear that they are (see *Harris v. Thompson*, 2012 IL 112525, ¶ 41 (statutory definition is "entirely consistent" with "long-standing case law" on willful and wanton conduct)), Barr cites *Ziarko* only for the proposition that willful and wanton conduct exists on a continuum (*Ziarko*, 161 Ill. 2d at 275-76); he ultimately agrees with defendants that the overarching issue was whether "Cunningham acted with conscious disregard for the safety of others." Thus, both parties agree that defendants' actions should be measured against the Act's definition.

¶ 17    Ordinarily, the issue of whether conduct is willful and wanton is a question of fact for the jury (*Stehlik v. Village of Orland Park*, 2012 IL App (1st) 091278, ¶ 34), but it may be determined by the trial court on a motion for directed verdict where all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict could stand (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). At oral argument, Barr argued that pursuant to this standard, he should have been permitted to proceed to the jury if he adduced some evidence to support his cause of action. But *Pedrick* requires more than "some slight evidence" in support of the nonmoving party's argument; rather,

there must be a "factual dispute[] of some substance" before a party is entitled to turn his case to the jury. *Id.* at 504-05. With this principle in mind, we turn to the merits of Barr's claim.

¶ 18    Initially, Barr contends that the trial court's denial of defendants' motion for summary judgment necessarily required the denial of defendants' motion for directed verdict, given that the same evidence underlay both motions.  We disagree. The standards for summary judgment and directed verdict are not identical. *Kitsch v. Goode*, 48 Ill. App. 3d 260, 270 (1977). Summary judgment is appropriate if the pleadings, depositions, and admissions on file reveal no genuine issue of material fact (735 ILCS 5/2-1005(c) (West 2010)), while a directed verdict should be granted if "there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case" (*Perfetti v. Marion County*, 2013 IL App (5th) 110489, ¶ 15 (citing *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37)). As such, it is not necessarily inconsistent for a court to deny summary judgment but, after having heard all of the evidence adduced during plaintiff's case-in-chief, grant a directed verdict on the same issue. See *Kitsch*, 48 Ill. App. 3d at 270 (no error where trial court denied summary judgment but granted directed verdict notwithstanding the similarity of evidence underlying the two motions). We review the trial court's grant of a motion for directed verdict *de novo*. *Benford v. Everett Commons, LLC*, 2014 IL App (1st) 130314, ¶ 28.

¶ 19    Barr contends that viewed in the light most favorable to him, the evidence demonstrated that Cunningham consciously disregarded the safety of her students when she did not require them to wear goggles during floor hockey despite knowing that the ball (1) would occasionally pop up off the ground and (2) had the potential to hit students in the face. But the failure to take every conceivable precaution to avert danger does not amount to willful and wanton conduct. Instead, when evaluating a defendant's conduct, courts ask whether the defendant has taken any

action to mitigate danger. For example, in *Poelker v. Warrensburg-Latham Community Unit School District No. 11*, 251 Ill. App. 3d 270, 274 (1993), the plaintiff was injured at a track and field meet when, during warm-ups, another student's discus hit him in the head. The court reasoned that because defendants implemented several rules for the students' safety, such as strictly limiting where and when students could throw the discus, the failure to take the additional step of having an adult exclusively supervising the discus warm-ups was not willful and wanton misconduct. *Id*. at 278; see also *Bielema v. River Bend Community School District No. 2*, 2013 IL App (3d) 120808, ¶ 19 (finding no willful and wanton conduct where the coach assigned to guard Gatorade spill on gymnasium floor turned away to engage in conversation, because defendant had taken "some action" to remedy danger spill posed). In other words, merely because a defendant could have done more to ensure safety, it does not follow that their conduct was willful and wanton. *Lynch v. Board of Education of Collinsville Community Unit School District No. 10*, 82 Ill. 2d 415, 430 (1980) ("insufficient precautions" for protection of football players "does not demonstrate an utter and conscious disregard" for their safety).

¶ 20    Here, defendants took several steps to ensure the safety of students who played floor hockey. For example, the students played with modified equipment in the form of a squishy "safety ball" and plastic sticks, as opposed to a traditional hockey puck and wooden sticks. Games were limited to 12 players due to the confined space. Cunningham also banned certain tactics particularly likely to cause injury, such as high-sticking, checking, tripping, and lifting the ball with the stick. Cunningham did not testify, however, that she believed these measures would prevent the ball from reaching a player's eyes. Thus, a jury could find Cunningham did nothing to mitigate this particular danger.

¶ 21    Cunningham testified that she decided not to require the use of the goggles because she did not believe that a *serious* injury would occur given the other equipment the students were using. That being said, Cunningham did not testify that she believed no eye injury whatsoever would occur. Similarly, Cunningham did not specify what she believed would constitute a serious injury. This decision making process involves the sort of conduct that a jury could find amounts to a conscious disregard for the safety of her students.

¶ 22    What further separates this case factually and legally from *Lynch* and its progeny is the uncontroverted fact that Cunningham knew that goggles were available for her students playing floor hockey. Goggles, having no purpose other than to provide protection, could only have been placed at Cunningham's disposal for that purpose. Additionally, there has been no suggestion that this safety resource was in use by other students when Cunningham's students were playing floor hockey. *Cf. Poelker*, 251 Ill. App. 3d at 274, 278 (finding that where 12 adults were supplied to supervise 88 children participating in a variety of track and field events, the failure to dedicate one adult to one particular event did not rise to willful and wanton conduct). As a result, we find that the trial court should have allowed this case to go to the jury for its consideration, simply because the conscious decision to forego the use of already-available safety equipment is the sort of conduct that a jury could find to be willful and wanton.

¶ 23    Cunningham points to the fact that she never saw any of her students get hit in the face with the safety ball. This ignores her testimony that she was aware that her students would occasionally lift the ball with their hockey sticks and that she knew that the ball could hurt a student if it hit the child's face. We also reject defendants' suggestion that they could only face liability for willful and wanton conduct in this factual scenario if there were evidence of a prior injury to a floor hockey player's eye with the use of a safety ball. We find absolutely no

8

precedent that would *require* that sort of specific notice in order to be exposed to liability under a theory of willful and wanton misconduct. Willful and wanton conduct involves failure to take reasonable precautions despite having notice that "substantial danger was involved." *Miller v. General Motors Corp.*, 207 Ill. App. 3d 148, 161 (1990) (quoting *Hering v. Hilton*, 12 Ill. 2d 559, 564 (1958)). We recognize that willful and wanton conduct requires "foreknowledge of specific and probable harm." *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, ¶ 79. At trial, plaintiff presented sufficient evidence of a conscious disregard for the safety of the students playing floor hockey. This evidence may not be the most compelling or dramatic presentation possible, but we simply cannot say that this evidence so overwhelmingly favors defendants that a verdict in plaintiff's favor could never stand.

¶ 24     In so holding, we agree with plaintiff that the decision in *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19 (1984) supports his claim for willful and wanton misconduct. In *Hadley*, the defendant shop teacher had assigned his class a woodworking project, but four students were instead hammering scrap metal through a hole in an anvil. *Id.* at 20. The teacher told them to stop, but did not require them to wear the safety goggles he had previously said were to be used during dangerous activities. *Id.* The teacher then left the students unsupervised and the boys resumed hammering, at which point a metal chip flew into the plaintiff's eye. *Id.* This court held that there was a question of fact as to whether the teacher's conduct was willful and wanton (*id.* at 23): the teacher clearly had knowledge of the substantial danger of the activity given that he ordered the boys to stop and previously instructed that goggles were required for such work. In light of his knowledge that substantial danger was involved, his failure to ensure the students were supervised and/or wearing goggles was evidence of willful and wanton conduct.

¶ 25    Similarly, in this case, Cunningham was fully aware that safety goggles were already available, as they were stored in the same shoe box as the safety balls. Additionally, Cunningham testified that the ball occasionally bounced in the air. Barr also testified that even with Cunningham's implemented safety precautions, Barr had seen the ball fly above students' waists. Cunningham's failure to apprehend a potentially dangerous situation exacerbated the inherent risks of this athletic activity. Since we find that a jury could conclude that these judgment calls were willful and wanton, the trial court erred in granting defendants' motion for directed verdict on this issue.

¶ 26                                   B. Section 2-201 Immunity

¶ 27    Notwithstanding our determination, defendants argue in the alternative that the circuit court properly entered a directed verdict because they were immune from liability under section 2-201 of the Act. That statute applies to even willful and wanton conduct. *Hascall v. Williams*, 2013 IL App (4th) 121131, ¶ 31.

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2010).

Although section 2-201 requires that the employee hold either a position involving policy determinations *or* a position involving the exercise of discretion, this section requires that the act or omission occur both in determining policy *and* exercising discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). Policy decisions are those that require balancing competing interests and making a judgment call regarding what solution will best

serve those interests. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 472 (2001).

¶ 28    Even if Cunningham held the type of position required by section 2-201 and exercised discretion in declining to require the students to wear goggles, the record does not show that this constituted a policy decision within the meaning of the statute. First, a jury could find that the school, rather than Cunningham, promulgated a policy regarding the use of goggles during floor hockey: not only did the school purchase the goggles, but they were kept with the hockey equipment.  Although Cunningham testified she was not aware of any such rule, and Peña testified that Cunningham had discretion in managing her classroom, a jury would not be required to believe self-serving testimony that the school purchased goggles only for them to remain untouched in the equipment closet containing other hockey equipment. *Cf. Arteman v. Clinton Community School District No. 15*, 198 Ill. 2d 475, 486-87 (2002) (finding the decision not to provide safety equipment was a discretionary policy determination where the district considered the cost and availability of equipment, the number of students involved, the students' various skill levels and the district's resources).

¶ 29    More importantly, no evidence whatsoever indicated that Cunningham balanced competing interests and made a judgment call regarding what solution would best serve those interests in deciding not to require students to wear goggles. While Cunningham testified that she was unsure whether she had enough goggles for the students, she did not testify that she checked to confirm this or that an insufficient amount of goggles impacted her decision. Accordingly, the circuit court correctly found that defendants were not entitled to immunity under section 2-201.

¶ 30                                    CONCLUSION

11

¶ 31    For the foregoing reasons, the jury could have found that Cunningham's misconduct was willful and wanton, notwithstanding that the jury could have also found otherwise. In light of the *Pedrick* standard, we reverse and remand for a new trial on the merits of Barr's claim. In light of our determination that the evidence did not demonstrate that Cunningham's omission resulted from a policy determination, defendants are not immune from Barr's claim under section 2-201.

¶ 32    Reversed and remanded.

¶ 33    PRESIDING JUSTICE MASON, dissenting.

¶ 34    The evidence presented during Barr's case-in-chief did not raise a substantial factual dispute as to whether defendants' conduct was willful and wanton. Accordingly, the trial court correctly directed a verdict in defendants' favor.  I, therefore, respectfully dissent from the majority's decision to remand for a new trial.

¶ 35    Cunningham articulated the reason for her decision not to require goggles in response to a question regarding whether the responsibility for the decision belonged to her or Barr: "I guess I don't feel like[  ] – that decision needed to be made based on the equipment we had.  I feel like the equipment that we had, the safety ball, … the light ball, the plastic floor hockey stick, those things, I thought were safe enough to – so that he wouldn't – students wouldn't have to wear the goggles either."  Later, on cross-examination, she was asked explicitly why she did not mandate the use of goggles, and responded "I thought the equipment that we had was safe.  I didn't think that an eye injury that was serious would even happen with the equipment that we had."

¶ 36    The evidence reveals that Cunningham's decision was premised on her belief that the modifications she had made to the game, in the form of (i) limiting the number of players, (ii) using a squishy safety ball and plastic sticks, and (iii) prohibiting (and enforcing the prohibition against) dangerous conduct such as high-sticking, tripping and checking, were sufficient to

protect the students from any injury, not just eye injuries. By definition, this conduct cannot be willful and wanton, as Cunningham's decision was made with the students' safety in mind. Instead, this is a quintessential example of a teacher taking, at worst, "insufficient precautions" for her students' protection; and our supreme court has determined that such failure does not, as a matter of law, amount to willful and wanton misconduct (*Lynch*, 82 Ill. 2d at 430 ("The evidence does not demonstrate an utter and conscious disregard for the safety of the [students], simply insufficient precautions for their protection.")). Although the majority concedes that "the failure to take every conceivable precaution to avert danger does not amount to willful and wanton conduct" (*supra* ¶ 19), this is exactly what it demands of defendants in finding that Barr's evidence presented a "factual dispute[ ] of some substance" (*Pedrick*, 37 Ill. 2d at 505).

¶ 37    I am unpersuaded by the majority's attempt to distinguish *Lynch* and its progeny by pointing out that Cunningham did not require students to use "already-available safety equipment." *Supra* ¶ 22. After all, in *Poelker*, there were 12 adults present at the track meet (*Poelker*, 251 Ill. App. 3d at 278), and the decision not to assign one to exclusively supervise the discus warm-ups can likewise be considered a failure to take advantage of "already-available" safety precautions. Nevertheless, in *Poelker*, this court, relying on *Lynch*, correctly affirmed the directed verdict in favor of defendants on the issue of willful and wanton conduct. *Id.* Here, while reasonable minds might differ as to whether Cunningham was negligent in failing to require students to wear goggles, there is absolutely no basis to conclude that she acted willfully in an "utter indifference to or conscious disregard of" her students' safety. 745 ILCS 10/1-210 (West 2010).

¶ 38    The majority also rejects the significance of the fact that defendants were unaware of any prior injuries during floor hockey. But while there is no precedent explicitly holding that a

13

defendant is required to have specific knowledge of prior injuries in order to be exposed to liability under a theory of willful and wanton misconduct, courts have held that the absence of prior injuries is *relevant* to a determination of whether a defendant's conduct was willful and wanton. See, *e.g.*, *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981) (where injury resulted to member of school softball team left unsupervised immediately prior to start of practice, lack of supervision did not amount to willful and wanton misconduct as matter of law in part because "no evidence of prior problems or hazards" with team members); *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1100 (1989) (lack of supervision in educably mentally handicapped classroom not willful and wanton misconduct because school had no knowledge of prior behavior problems by student who threw chalkboard clip and injured fellow classmate). Particularly in light of the lack of any incidents on the numerous prior occasions that Cunningham's students, including Barr, had played floor hockey, the notion that she should have anticipated the injury that occurred approaches a strict liability standard.

¶ 39    If an eye injury from a squishy safety ball during a supervised floor hockey game played with plastic sticks can represent a "specific and probable harm" (*Choice*, 2012 IL App (1st) 102877, ¶ 79), it is difficult to imagine any injury that could not be so categorized. Under the majority's standard, *Poelker* should have been decided differently. The defendants in that case instructed students regarding safety during discus warm-ups and recruited adults to supervise warm-ups to avoid precisely the foreseeable injury that occurred – another person being hit by an errant discus. *Poelker*, 251 Ill. App. 3d at 278. But *Poelker* found that was not enough to support a finding that defendants were guilty of an utter indifference to or conscious disregard of students' safety as a result of their failure to assign one of the dozen adult supervisors available to exclusively monitor the discus warm-ups. *Id.* But according to the majority's reasoning, *Poelker*

14

should have gone to the jury. In other words, the majority's decision requires public entities to take every possible precaution to prevent all injuries, no matter how remote and improbable those injuries may seem, lest they find themselves liable for willful and wanton conduct.

¶ 40    Because I believe the trial court property directed a verdict in favor of defendants on the issue of supervisory immunity, I would not reach defendants' alternative argument that they were also entitled to a directed verdict on the basis of discretionary immunity.

¶ 41    For these reasons, I respectfully dissent.